Nathaniel L. Dilger (CA Bar No. 196203)
Email: ndilger@onellp.com
Peter R. Afrasiabi (CA Bar No. 193336)
Email: pafrasiabi@onellp.com
Taylor C. Foss (CA Bar No. 253486)
tfoss@onellp.com
**ONE LLP**
23 Corporate Plaza
Suite 150-105
Newport Beach, CA 92660
Telephone:  (949) 502-2870
Facsimile:  (949) 258-5081

William J. O'Brien (CA Bar No. 99526)
Email: wobrien@onellp.com
**ONE LLP**
400 Corporate Pointe, Suite 300
Culver City, CA 90230

Telephone:  (310) 866-5158
Facsimile:  (949) 943-2085

*Attorneys for Plaintiff,*
FaceTec, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FACETEC, INC., a Delaware corporation,<br><br>               Plaintiff,<br><br>    v.<br><br>JUMIO CORPORATION, a Delaware corporation,<br><br>              Defendant. | Case No. 5:24-cv-3623<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff FaceTec, Inc. ("FaceTec" or "Plaintiff") hereby complains and alleges against Defendant Jumio Corporation ("Jumio" or "Defendant") as follows:

### PARTIES

1.     Plaintiff FaceTec is a Delaware limited liability company with its principal offices located at 1925 Village Center Cir., Ste 150, Las Vegas, NV 89134.

2.     FaceTec is informed and believes that Defendant Jumio is a Delaware limited corporation with a regular and established place of business at 100 Mathilda Place, Suite 100, Sunnyvale, CA 94086.

### NATURE OF THE ACTION

3.     This is an action for patent infringement arising under the patent laws of the United States 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271, and the Court's supplemental jurisdiction pursuant to 28 U.S. Code § 1367.

4.     FaceTec is informed and believes that Defendant Jumio has infringed and continues to infringe, contribute to the infringement of, and/or actively induce others to infringe Plaintiff's U.S. Patent No. 10,776,471 B2 (the "'471 Patent"), U.S. Patent No. US 11,157,606 B2 (the "'606 Patent), U.S. Patent No. 11,693,938 B2 (the "'938 Patent"); and U.S. Patent No. 11,874,910 B2 (the "'910 Patent") (collectively, the "FaceTec Patents-in-Suit").  (**Exhibits A, B, C, and D to this Complaint**.)

### JURISDICTION

5.     This Court has subject matter jurisdiction over action under 28 U.S.C. §§ 1331 and 1338 because this is a civil action for patent infringement arising under Title 35 of the United States Code.  This Court has personal jurisdiction over Jumio because Jumio does and has done substantial business in this judicial District, including: (i) committing acts of patent infringement and/or contributing to or inducing acts of patent infringement by others in this judicial District and elsewhere in this State; (ii) regularly conducting business in this State and judicial District; (iii) directing advertising to or soliciting business from persons residing in this State and judicial

District; and (iv) engaging in other persistent courses of conduct, and/or deriving substantial revenue from products and/or services provided to persons in this District and State.

## **VENUE**

6. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b) because Jumio has a regular and established place of business on this District, has transacted business in this District, and has committed acts of patent infringement in this District.

## **DIVISIONAL ASSIGNMENT**

7. FaceTec is informed and believes that Defendant Jumio's headquarters, a regular and established place of business, is located at 100 Mathilda Place, Suite 100, Sunnyvale, CA 94086, which is in Santa Clara County. FaceTec is informed and believes that a substantial part of the events giving rise to its claims asserted in this case occurred at that location and, consequently, this civil action arose there. Accordingly, this case is properly assigned to the San Jose Division of this Court under Local Rules 3-2(c) and (e),

## **FACTUAL BACKGROUND**

### A. **FaceTec's 3D Depth and Liveness Detection Technology**

8. The security of online functions such as banking, payments, and other financial activities demand that precautions be taken against attempts by unauthorized users to "spoof" biometric identity verification software and obtain improper online access. Liveness detection added to the identity verification process seeks to ensure that a live three-dimensional human is present in front of the camera at the time biometric face data is collected. For example, liveness detection would detect if – rather than an actual living person being imaged at the time of data collection – an attempt to "spoof" the liveness detection software is being perpetrated. For example, a fraudster might present an artifact such as a 2-dimensional (2D) photo of a face, or a prerecorded video of a face.

9. FaceTec is a leader in biometric liveness detection technology. Simply explained, this technology utilizes face image data to verify the physical presence of a live human with high confidence. FaceTec's technology operates to verify that the biometric data collected (face images) came from a three-dimensional human face before – for example – creating a new digital

**COMPLAINT**

account, providing authorized access to an existing account, or allowing access to a protected computing device. In one application, FaceTec's technology utilizes face image data to verify the physical presence of a person during a remote (e.g., online) transaction.

10. Once the user's liveness is proven to a high confidence and the newly collected face data also matches trusted face data with high confidence, the user may then be allowed access to a protected computer, smartphone, bank account, etc., or to open a new account, etc.

11. While liveness detection alone offers significant security benefits, this technology is often paired with biometric face matching to enable remote user authentication or user identity verification. Remote user identity verification generally includes the following steps[1]:

- Capture one or more photos or video frames of the user's face.
- Perform a liveness check to determine if the source of the face data is a live and physically present human, as opposed to a spoof attempt utilizing captured data from a pre-collected artifact.
- Capture one or more images of the user's Photo ID document.
- Extract text data from the Photo ID and any barcode or NFC chip present with the document.
- Compare the liveness-proven biometric face data to the biometric face data from the Photo ID or NFC chip, or in a trusted identity issuer's database and confirm a sufficient level of matching between the two.

12. FaceTec's technology for liveness detection inspects and analyzes numerous different aspects of the face images collected by the camera of the user's camera-equipped computing device. One very important aspect analyzed is "perspective distortion," which, when present in the appropriate respects, verifies to a high level of confidence that the source of the face data was three dimensional ("3D"). Typical cameras on a mobile device or any other device include a curved lens and a flat digital sensor. This results in some level of "fisheye" effect in the images taken by the camera, more accurately called "perspective distortion." In some instances,

---

[1] The order of operation may vary.

this distortion may not be visible to the human eye, or may only be noticeable at certain object distances or camera focal lengths; and human observers cannot reliably determine whether any observed perspective distortion is consistent with the distortion that would result from the change in distance between a face and a camera. This is particularly true given the growing sophistication of fraudsters, who can easily manipulate a digital image to mimic distortion sufficient to fool a human observer. The differences or distortion between the captured images can vary with focal length or object distance between the subject in the foreground, the background and the lens. The degree of the distortion is dependent on the type of optics used in the camera's lens, internal camera measurements, and other factors.

13.     The FaceTec software inspects for user liveness and user 3-dimensionality by collecting one or more face images at a first distance from the camera, collecting one or more face images at a second distance from the camera, and then comparing the images to confirm the presence of appropriate perspective distortion and hence photographic evidence of user 3-dimensionality.

14.     The following two images simulate the expected changes in the appearance of a 3D face when the capture distance is changed. As can be seen below, perspective distortion causes the user's nose to swell in proportion to the rest of the face, as well as other subtle but detectable distortions in the face shown in the second image as compared to the face of the first image. FaceTec's software can detect this perspective distortion and other expected differences by examining at least two images taken at different distances between the subject and the camera.

 

First Image          Second Image

15.    By measuring/confirming various indicia such as 3D face depth, skin texture, eye reflections, etc., the FaceTec software is able to confirm a user's liveness with exceptionally high confidence.

16.    Others have attempted to use 2D images to detect the liveness of the user using either a single photo, or a series of photos taken at the same distance.  2D liveness, however, simply does not have the necessary accuracy to detect today's sophisticated threats.  Additionally, 2D face matching is more vulnerable to impersonation attacks because many people have high resolution photos posted online that can be used as spoof artifact source material.

17.    Alternatively, hardware-based 3D systems have also been used, including Apple's "Face ID," which allows a user to unlock their iPhone simply by looking at the device.  Apple's system, however, requires specialized infrared cameras that are built into the phone screen to confirm 3D depth as part of its liveness analysis.  But this need for special hardware means this technology cannot be utilized by the vast majority of current computer and smart device owners

around the world, whose devices do not include built-in infrared cameras. In contrast, FaceTec's 3D liveness detection software can be implemented on virtually any device that is equipped with a 2D camera, which includes almost all modern laptop computers, smartphones, and desktop computers. FaceTec thus invented a 3D method that – unlike other alternative technologies – does not require specialized 3D hardware to implement. FaceTec's software solution can indeed be used on an estimated 10 billion Android & iOS devices, smartphones, and camera-equipped computers.

18. Currently, FaceTec's technology provides approximately 2.5 billion 3D liveness checks annually on six continents and for all combinations of user age, gender, ethnicity and device type for hundreds of customers that include dozens of large banks, Canadian Parliament, and the United States Department of Homeland Security. And FaceTec's patented technology is highly accurate and effective, with a False Acceptance Rate (FAR) of 1/125,000,000 @ <1% FRR.

**B.      FaceTec's Patent Portfolio**

19. As noted above, FaceTec's patented technique solves problems that plagued prior art systems, both 2D and 3D, including that (a) 2D liveness technology simply does not have the necessary accuracy to detect today's sophisticated threats, and (b) that FaceTec's "one size fits all" solution can be implemented on nearly any camera-equipped computing device.

20. As a result of these important advantages, FaceTec's patented technology has been highly successful and is used worldwide. The United States Patent Office has carefully reviewed FaceTec's technological innovations and has granted not only the four Patents-in-Suit asserted those two patents, but also numerous additional U.S. Patents, with further patent applications still pending. *See, e.g.*, U.S. Patent No. US10776471B2 (filed Mar. 18, 2019), ("Priority and Related Applications"), available at patents.google.com/patent/US10776471B2/.

21. FaceTec has sought protection for its technological innovations, which has resulted in the issuance of not only the Patents-in-Suit here, but also additional related patents.

22. The '471 Patent issued on June 10, 2014, and is titled "Facial recognition authentication system including path parameters." FaceTec is the owner of the '471 Patent. (A copy of the patent is **Exh. A** to this Complaint.)

23. The '606 Patent issued on October 26, 2021, and is titled "Facial recognition authentication system including path parameters." FaceTec is the owner of the '606 Patent. (A copy of the patent is **Exh. B** to this Complaint.)

24. The '938 Patent issued on July 4, 2023, and is titled "Facial recognition authentication system including path parameters." FaceTec is the owner of the '938 Patent. (A copy of the patent is **Exh. C** to this Complaint.)

25. The '910 Patent issued on January 16, 2024, and is titled "Facial recognition authentication system including path parameters." FaceTec is the owner of the '910 Patent. (A copy of the patent is **Exh. D** to this Complaint.)

26. Additional patents issued to FaceTec include the following:

- 10,915,618: "Method to add remotely collected biometric images / templates to a database record of personal information";
- 10,803,160: "Method to verify and identify blockchain with user question data";
- 11,991,173: "Method and apparatus for creation and use of digital identification";
- 11,727,098: "Method and apparatus for user verification with blockchain data storage";
- 11,657,132: "Method and apparatus to dynamically control facial illumination";
- 11,574,036: "Method and system to verify identity";
- 11,562,055: "Method to verify identity using a previously collected biometric image/data";
- 10,698,995: "Method to verify identity using a previously collected biometric image/data";
- 11,256,792: "Method and apparatus for creation and use of digital identification";

**COMPLAINT**

- 10,614,204: "Facial recognition authentication system including path parameters";
- 10,262,126: "Facial recognition authentication system including path parameters";
- 9,953,149: "Facial recognition authentication system including path parameters";
- D813,264: "Display screen or portion thereof with graphical user interface";
- D763872: "Display screen or portion thereof with graphical user interface";
- D987653: "Display screen or portion thereof with graphical user interface."

27. In addition, FaceTec owns numerous pending U.S. and foreign patent applications on its technology.

**C.     Defendant Jumio and Its Infringing Biometric Security Software**

28. As shown in the attached claim charts (**Exhibits E, F, G, and H**), FaceTec alleges herein that Defendant Jumio makes, uses, offers for sale and sells in the United States products, systems, and/or services (collectively, "Jumio Accused Instrumentalities" or "Jumio Liveness Detection Technology") that infringe one or more claims of each of the FaceTec Patents-in-Suit, which Jumio Accused Instrumentalities include at least the following:

a.     All Jumio products and services that include or use technology of the kind referred to by Jumio or by its vendor iProov Ltd. as "Liveness Assurance," "Basic Face Verifier," or "Express Liveness."  *See, e.g.*, Jumio, "Jumio Adds iProov's Award-Winning Liveness Detection to its KYX Platform," *available at* https://www.jumio.com/about/press-releases/iproov-liveness-detection-kyx (April 7, 2021) ("The Jumio and iProov partnership brings Liveness Assurance™ . . . to enterprises around the globe ensuring that the online user is genuine (i.e., not an imposter), physically present and not a sophisticated cyberattack using deepfakes or other synthetic media."); *see also* www.iproov.com/liveness-detection.

b.     All Jumio products and services that include, use, or perform services or technology of the kind referred to by Jumio as "Liveness Checks."  *See, e.g.*,

Jumio, "Industry-Leading Technologies," *available at* www.jumio.com/technology (2024) ("For example, we can determine whether the individual submits a screenshot or paper copy of a picture (i.e., a printed photo) instead of an authentic selfie — commonly referred to as a presentation attack. We can also detect video injection attacks, which involve injecting a deepfake into the digital stream by using a virtual camera or hacking the vendor's API or SDK.").[2]

c.  All Jumio products and services that include, use, or perform services or technology of the kind referred to by Jumio as "Liveness Detection," "Jumio's liveness detection," "Jumio's state-of-the-art liveness detection," "Selfie + Liveness Check," or the like.  *See, e.g.*, Jumio, "Liveness Detection," *available at* www.jumio.com/products/liveness-detection (2024).

d.  Any other Jumio product or service that (1) prompts a user to position their face at more than one distance from a user's device camera, (2) utilizes the user's device camera to capture face image data at at least two distances between the user's face and the device's camera, and (3) thereafter compares the face image data to evaluate user 3-dimensionality.

e.  Any inclusion of, provisions for, or use of any of the foregoing in, on, or via Jumio's Netverify or KYX platform or any other Jumio platform.  *See, e.g.*, Jumio, "Welcome to Jumio!," *available at* portal.netverify.com/#/dashboard.

f.  Any inclusion of, provisions for, or use of any of the foregoing in, on, or via any Jumio Showcase App for Android or iOS.  *See, e.g.*, Apple Inc., "App Store Preview: Jumio Showcase," *available at* apps.apple.com/th/app/jumio-

---

[2] For the avoidance of doubt, FaceTec does not contend that any products and services referred to in this subparagraph or Subparagraph C infringe the FaceTec Patents-in-Suit if and to the extent that any such products or services solely consist of or solely practice what Jumio and iProov presently market as "Genuine Presence Assurance" or "Dynamic Liveness."  *See, e.g.*, Jumio, "Dynamic Liveness," *available at* www.iproov.com/biometric-encyclopedia/genuine-presence-assurance (2024) ("Patented Flashmark™ technology uses controlled illumination to provide effortless, secure, and reassuring biometric authentication. An instruction is sent to the user's device, along with a time-limited session code, which tells the device to illuminate the user's face with an unpredictable sequence of colors.").

**COMPLAINT**

showcase/id639531180 (2024); Google LLC, "Google Play: Jumio Showcase,"
*available at*
play.google.com/store/apps/details?id=com.jumio.demo.netverify&hl=en_US
(Mar. 14, 2024).

29. Examples of infringement by the Accused Instrumentalities identified above are provided in the attached claim charts. (**Exhs. E, F, G, H.**)

30. Importantly, Defendant Jumio is well aware of both FaceTec and its patented technology. Jumio is a direct competitor of FaceTec and provides competing biometric liveness detection software products. *See, e.g.*, www.jumio.com/products/liveness-detection ("Using AI-driven algorithms, Jumio securely detects whether a biometric authentication sample is a live human being or a fake representation."). Jumio has made numerous attempts at creating and distributing liveness detection technology. But when Jumio's efforts at liveness detection technology failed (*see, e.g.*, www.jumio.com/about/press-releases/eyeball-tracking/ and www.jumio.com/app/uploads/2018/07/netverify-liveness-detection.pdf), Jumio abandoned these efforts and instead contracted with FaceTec to use FaceTec's patented liveness detection technology.

31. But Jumio eventually broke its contract with FaceTec and thereafter contracted with another FaceTec competitor, iProov Ltd., which thereafter deployed for Jumio a liveness detection technology that infringes on FaceTec's patent rights. After iProov refused to cease its infringing conduct, FaceTec sued iProov in late 2021 in the United States District Court for the District of Nevada. *See FaceTec Inc. v. iProov Ltd.,* Case No. 2:21-cv-02252-ART-BNW. FaceTec asserts in its complaint against iProov claims for infringement of both the '471 and '606 patents as well as claims for breach of contract and tortious interference.

32. Jumio has persisted, however, in using iProov's infringing technology. Jumio has also recently introduced Jumio-branded liveness detection technologies that either constitute or incorporate iProov's infringing liveness detection technology or are highly similar to iProov's infringing liveness detection technology. Like iProov's infringing liveness detection technology – and for similar reasons – Jumio's own-branded liveness detection technologies include multiple

**COMPLAINT**

aspects that are copied directly from FaceTec and that infringe the FaceTec Patents-in-Suit as shown in the attached charts. (*See, e.g.*, **Exhs. E, F, G, H.**) Faced with Jumio's blatant disregard for and infringement of FaceTec's patent rights, FaceTec contacted Jumio in writing on or about August 23, 2023, and demanded that Jumio immediately cease and desist any further infringement of FaceTec's patent rights or other intellectual property, including ceasing all use of any technology that falls within the scope of the FaceTec Patents-in-Suit. But while Jumio responded to this letter shortly thereafter, Jumio refused FaceTec's demand to cease and desist and has continued since that date to persist in its infringement of FaceTec's patent rights, including its infringement of the FaceTec Patents-in-Suit.

33. Faced with Jumio's continued and blatant infringement of FaceTec's patent rights, FaceTec now has no choice but to pursue this lawsuit.

## FIRST CLAIM FOR RELIEF

### (Infringement of the '471 Patent – 35 U.S.C. §§ 271 *et seq.*)

34. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as though fully set forth herein.

35. Defendant Jumio has actual knowledge of, not only the '471 Patent, but also Jumio's infringement of that patent. For example, in August of 2023, FaceTec contacted Jumio in writing, specifically informing Jumio that the Jumio Accused Instrumentalities infringe at least Claim 10 of the '471 Patent. But despite having full knowledge of the '471 Patent and also its infringement of that patent, Jumio has continued to directly infringe Claim 10 and other claims of the '471 Patent by developing, making, using, offering to sell, selling and/or importing, in this District, and elsewhere in the United States, the Jumio Accused Instrumentalities. For example, as shown in the chart attached as **Exhibit E**, users of the Jumio Accused Instrumentalities (whether those users be Jumio customers or Jumio itself) infringe at least Claim 10 of the '471 Patent.

36. FaceTec contends that – to the extent that Defendant does not directly infringe one or more claims of the '471 Patent, Defendant indirectly infringes those claims. Defendant's acts of indirect infringement include inducement of infringement and contributory infringement under 35 U.S.C. §§ 271(b) and (c). Defendant contributorily infringes the '471 Patent by using, offering to

sell, and selling within the United States and/or importing into the United States the Jumio Accused Instrumentalities, including components of patented machines, manufactures, combinations, materials and/or apparatus for use in practicing the patented systems, processes or methods, which constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the '471 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

37. Among other things, Jumio has – with full knowledge of the '471 Patent and its applicability to the Jumio Accused Instrumentalities – specifically designed, or caused to be designed, the Jumio Accused Instrumentalities in a manner that infringes the '471 Patent and has also specifically instructed users of the Jumio Accused Instrumentalities – via on-screen visual guidance and/or online and/or written instructional materials – to use the Jumio Accused Instrumentalities in a manner that infringes one or more claims of the '471 Patent, including at least Claim 10.

38. By way of example, Jumio's indirect infringement includes offering customers and users access to the Jumio Accused Instrumentalities to be used in accordance with the claimed methods and systems, including certain user-supplied components, such as user-supplied computers, tablets, and smartphones. Defendant has induced infringement of the '471 Patent by virtue of the activities described herein and in the attached charts, as well as by aiding, assisting, and abetting the practice of the patented inventions as set forth herein and in the attached charts.

39. Such activities include Defendant's provision of web-based, phone-based, email-based and/or literature-based promotion, support and assistance with respect to utilizing the Jumio Accused Instrumentalities (*e.g.*, manuals, product guides, user forums, troubleshooting tips, and other forms of support and assistance for utilizing the Jumio Accused Instrumentalities). Such activities further include instructing Defendant's customers to utilize Jumio Accused Instrumentalities in an infringing manner and configuring the Jumio Accused Instrumentalities such that a user will be unable to obtain verification unless the Jumio Accused Instrumentalities are used in an infringing manner.

40.     As one example, during an authentication session, Jumio will specifically instruct users to utilize the Jumio Accused Instrumentalities in a manner that infringes one or more claims of the FaceTec Patents-in-Suit. Indeed, unless the users follow the specific instructions provided by Defendant to utilize the Jumio Accused Instrumentalities in an infringing manner, the Jumio Accused Instrumentalities will not verify the physical presence of the user.

41.     Defendant's additional activities include creation, provision, distribution, and promotion of instructions, user guides and other product-related documentation, technical support, video tutorials, training and certification, user forums, professional consultation, warranty support, indemnification, technical notes, release notes, articles, etc., for utilizing the Jumio Accused Instrumentalities.

42.     Jumio's actions constitute direct infringement, contributory infringement, and/or active inducement of infringement of at least Claim 10 of the '471 Patent in violation of 35 U.S.C. § 271.

43.     FaceTec has sustained damages and will continue to sustain damages as a result of Defendant's aforesaid acts of infringement.

44.     FaceTec is entitled to recover damages sustained as a result of Jumio's wrongful acts in an amount to be proven at trial.

45.     Jumio's infringement of FaceTec's rights under the '471 Patent will continue to damage Plaintiff's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is enjoined by this Court.

46.     In addition, Jumio has infringed the '471 Patent – directly, contributorily, and by inducement – with full knowledge of the '471 Patent and despite having full knowledge that its actions constituted infringement of that patent. For at least this reason, Jumio has willfully infringed the '471 Patent, entitling FaceTec to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

### (Infringement of the '606 Patent – 35 U.S.C. §§ 271 *et seq.*)

47.     Plaintiff realleges and incorporates by reference the foregoing paragraphs, as though fully set forth herein.

48.     Defendant Jumio has actual knowledge of, not only the '606 Patent, but also Jumio's infringement of that patent. For example, in August of 2023, FaceTec contacted Jumio in writing, specifically informing Jumio that the Jumio Accused Instrumentalities infringe at least Claim 1 of the '606 Patent.  But despite having full knowledge of the '606 Patent and also its infringement of that patent, Jumio has continued to directly infringe Claim 1 and other claims of the '606 Patent by developing, making, using, offering to sell, selling and/or importing, in this District and elsewhere in the United States, the Jumio Accused Instrumentalities.  For example, as shown in the chart attached as **Exhibit F**, users of the Jumio Accused Instrumentalities (whether those users be Jumio customers or Jumio itself) infringe at least Claim 1 of the '606 Patent.

49.     FaceTec contends that – to the extent that Defendant does not directly infringe one or more claims of the '606 Patent, Defendant indirectly infringes those claims. Defendant's acts of indirect infringement include inducement of infringement and contributory infringement under 35 U.S.C. §§ 271(b) and (c).  Defendant contributorily infringes the '606 Patent by using, offering to sell, and selling within the United States and/or importing into the United States the Jumio Accused Instrumentalities, including components of patented machines, manufactures, combinations, materials and/or apparatus for use in practicing the patented systems, processes or methods, which constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the '606 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

50.     Among other things, Jumio has – with full knowledge of the '606 Patent and its applicability to the Jumio Accused Instrumentalities – specifically designed, or caused to be designed, the Jumio Accused Instrumentalities in a manner that infringes the '606 Patent and has also specifically instructed users of the Jumio Accused Instrumentalities – via on screen visual guidance and/or online and/or written instructional materials – to use the Jumio Accused

Instrumentalities in a manner that infringes one or more claims of the '606 Patent, including at least Claim 1.

51.     By way of example, Jumio's indirect infringement includes offering customers and users access to the Jumio Accused Instrumentalities to be used in accordance with the claimed methods and systems, including certain user-supplied components, such as user-supplied computers, tablets, and smartphones. Defendant has induced infringement of the '606 Patent by virtue of the activities described herein and in the attached charts, as well as by aiding, assisting, and abetting the practice of the patented inventions as set forth herein and in the attached charts.

52.     Such activities include Defendant's provision of web-based, phone-based, email-based and/or literature-based promotion, support, and assistance with respect to utilizing the Jumio Accused Instrumentalities (*e.g.*, manuals, product guides, user forums, troubleshooting tips, and other forms of support and assistance for utilizing the Jumio Accused Instrumentalities). Such activities further include instructing Defendant's customers to utilize Jumio Accused Instrumentalities in an infringing manner and configuring the Jumio Accused Instrumentalities such that a user will be unable to obtain verification unless the Jumio Accused Instrumentalities are used in an infringing manner.

53.     As one example, during an authentication session, Jumio will specifically instruct users to utilize the Jumio Accused Instrumentalities in a manner that infringes one or more claims of the FaceTec Patents-in-Suit. Indeed, unless the users follow the specific instructions provided by Defendant to utilize the Jumio Accused Instrumentalities in an infringing manner, the Jumio Accused Instrumentalities will not verify the physical presence of the user.

54.     Defendant's additional activities include creation, provision, distribution, and promotion of instructions, user guides and other product-related documentation, technical support, video tutorials, training and certification, user forums, professional consultation, warranty support, indemnification, technical notes, release notes, articles, etc., for utilizing the Jumio Accused Instrumentalities.

**COMPLAINT**

55.    Jumio's actions constitute direct infringement, contributory infringement, and/or active inducement of infringement of at least Claim 1 of the '606 Patent in violation of 35 U.S.C. § 271.

56.    FaceTec has sustained damages and will continue to sustain damages as a result of Defendant's aforesaid acts of infringement.

57.    FaceTec is entitled to recover damages sustained as a result of Jumio's wrongful acts in an amount to be proven at trial.

58.    Jumio's infringement of FaceTec's rights under the '606 Patent will continue to damage Plaintiff's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is enjoined by this Court.

59.    In addition, Jumio has infringed the '606 Patent – directly, contributorily, and by inducement – with full knowledge of the '606 Patent and despite having full knowledge that its actions constituted infringement of that patent. For at least this reason, Jumio has willfully infringed the '606 Patent, entitling FaceTec to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### THIRD CLAIM FOR RELIEF

**(Infringement of the '938 Patent – 35 U.S.C. §§ 271 *et seq.*)**

60.    Plaintiff realleges and incorporates by reference the foregoing paragraphs, as though fully set forth herein.

61.    Defendant Jumio has actual knowledge of, not only the '938 Patent, but also Jumio's infringement of that patent. For example, in August of 2023, FaceTec contacted Jumio in writing, specifically informing Jumio that the Jumio Accused Instrumentalities infringe at least Claim 8 of the '938 Patent.  But despite having full knowledge of the '938 Patent and also its infringement of that patent, Jumio has continued to directly infringe Claim 8 and other claims of the '938 Patent by developing, making, using, offering to sell, selling and/or importing, in this District and elsewhere in the United States, the Jumio Accused Instrumentalities.  For example, as shown in the chart attached as **Exhibit G**, users of the Jumio Accused Instrumentalities (whether those users be Jumio customers or Jumio itself) infringe at least Claim 8 of the '938 Patent.

**COMPLAINT**

62.     FaceTec contends that – to the extent that Defendant does not directly infringe one or more claims of the '938 patent, Defendant indirectly infringes those claims. Defendant's acts of indirect infringement include inducement of infringement and contributory infringement under 35 U.S.C. §§ 271(b) and (c).  Defendant contributorily infringes the '938 Patent by using, offering to sell, and selling within the United States and/or importing into the United States the Jumio Accused Instrumentalities, including components of patented machines, manufactures, combinations, materials and/or apparatus for use in practicing the patented systems, processes or methods, which constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the '938 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

63.     Among other things, Jumio has – with full knowledge of the '938 Patent and its applicability to the Jumio Accused Instrumentalities – specifically designed, or caused to be designed, the Jumio Accused Instrumentalities in a manner that infringes the '938 Patent and has also specifically instructed users of the Jumio Accused Instrumentalities – via on screen visual guidance and/or online and/or written instructional materials – to use the Jumio Accused Instrumentalities in a manner that infringes one or more claims of the '938 Patent, including at least Claim 8.

64.     By way of example, Jumio's indirect infringement includes offering customers and users access to the Jumio Accused Instrumentalities to be used in accordance with the claimed methods and systems, including certain user-supplied components, such as user-supplied computers, tablets, and smartphones. Defendant has induced infringement of the '938 Patent by virtue of the activities described herein and in the attached charts, as well as by aiding, assisting, and abetting the practice of the patented inventions as set forth herein and in the attached charts.

65.     Such activities include Defendant's provision of web-based, phone-based, email-based and/or literature-based promotion, support and assistance with respect to utilizing the Jumio Accused Instrumentalities (*e.g.*, manuals, product guides, user forums, troubleshooting tips, and other forms of support and assistance for utilizing the Jumio Accused Instrumentalities). Such activities further include instructing Defendant's customers to utilize Jumio Accused

18

**COMPLAINT**

Instrumentalities in an infringing manner and configuring the Jumio Accused Instrumentalities such that a user will be unable to obtain verification unless the Jumio Accused Instrumentalities are used in an infringing manner.

66.     As one example, during an authentication session, Jumio will specifically instruct users to utilize the Jumio Accused Instrumentalities in a manner that infringes one or more claims of the FaceTec Patents-in-Suit. Indeed, unless the users follow the specific instructions provided by Defendant to utilize the Jumio Accused Instrumentalities in an infringing manner, the Jumio Accused Instrumentalities will not verify the physical presence of the user.

67.     Defendant's additional activities include creation, provision, distribution, and

68.     promotion of instructions, user guides and other product-related documentation, technical support, video tutorials, training and certification, user forums, professional consultation, warranty support, indemnification, technical notes, release notes, articles, etc., for utilizing the Jumio Accused Instrumentalities. Jumio's actions constitute direct infringement, contributory infringement, and/or active inducement of infringement of at least Claim 8 of the '938 Patent in violation of 35 U.S.C. § 271.

69.     FaceTec has sustained damages and will continue to sustain damages as a result of Defendant's aforesaid acts of infringement.

70.     FaceTec is entitled to recover damages sustained as a result of Jumio's wrongful acts in an amount to be proven at trial.

71.     Jumio's infringement of FaceTec's rights under the '938 Patent will continue to damage Plaintiff's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is enjoined by this Court.

72.     In addition, Jumio has infringed the '938 Patent – directly, contributorily, and by inducement – with full knowledge of the '938 Patent and despite having full knowledge that its actions constituted infringement of that patent. For at least this reason, Jumio has willfully infringed the '938 Patent, entitling FaceTec to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COMPLAINT**

**FOURTH CLAIM FOR RELIEF**

**(Infringement of the '910 Patent – 35 U.S.C. §§ 271 *et seq.*)**

73.     Plaintiff realleges and incorporates by reference the foregoing paragraphs, as though fully set forth herein.

74.     Defendant Jumio has actual knowledge of, not only the '910 Patent, but also Jumio's infringement of that patent. For example, in August of 2023, FaceTec contacted Jumio in writing, specifically informing Jumio that the Jumio Accused Instrumentalities infringe at least Claim 10 of the '910 Patent.  But despite having full knowledge of the '910 Patent and also its infringement of that patent, Jumio has continued to directly infringe one or more claims of the '910 Patent by developing, making, using, offering to sell, selling and/or importing, in this District and elsewhere in the United States, the Jumio Accused Instrumentalities.  For example, as shown in the chart attached as **Exhibit H**, users of the Jumio Accused Instrumentalities (whether those users be Jumio customers or Jumio itself) infringe at least Claim 10 of the '910 Patent.

75.     FaceTec contends that – to the extent that Defendant does not directly infringe one or more claims of the '910 patent, Defendant indirectly infringes those claims. Defendant's acts of indirect infringement include inducement of infringement and contributory infringement under 35 U.S.C. §§ 271(b) and (c).  Defendant contributorily infringes the '910 Patent by using, offering to sell, and selling within the United States and/or importing into the United States the Jumio Accused Instrumentalities, including components of patented machines, manufactures, combinations, materials and/or apparatus for use in practicing the patented systems, processes or methods, which constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the '910 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

76.     Among other things, Jumio has – with full knowledge of the '910 Patent and its applicability to the Jumio Accused Instrumentalities – specifically designed, or caused to be designed, the Jumio Accused Instrumentalities in a manner that infringes the '910 Patent and has also specifically instructed users of the Jumio Accused Instrumentalities – via on screen visual guidance and/or online and/or written instructional materials – to use the Jumio Accused

Instrumentalities in a manner that infringes one or more claims of the '910 Patent, including at least Claim 10.

77. By way of example, Jumio's indirect infringement includes offering customers and users access to the Jumio Accused Instrumentalities to be used in accordance with the claimed methods and systems, including certain user-supplied components, such as user-supplied computers, tablets, and smartphones. Defendant has induced infringement of the '910 Patent by virtue of the activities described herein and in the attached charts, as well as by aiding, assisting, and abetting the practice of the patented inventions as set forth herein and in the attached charts.

78. Such activities include Defendant's provision of web-based, phone-based, email-based and/or literature-based promotion, support and assistance with respect to utilizing the Jumio Accused Instrumentalities (*e.g.*, manuals, product guides, user forums, troubleshooting tips, and other forms of support and assistance for utilizing the Jumio Accused Instrumentalities). Such activities further include instructing Defendant's customers to utilize Jumio Accused Instrumentalities in an infringing manner and configuring the Jumio Accused Instrumentalities such that a user will be unable to obtain verification unless the Jumio Accused Instrumentalities are used in an infringing manner.

79. As one example, during an authentication session, Jumio will specifically instruct users to utilize the Jumio Accused Instrumentalities in a manner that infringes one or more claims of the FaceTec Patents-in-Suit. Indeed, unless the users follow the specific instructions provided by Defendant to utilize the Jumio Accused Instrumentalities in an infringing manner, the Jumio Accused Instrumentalities will not verify the physical presence of the user.

80. Defendant's additional activities include creation, provision, distribution, and promotion of instructions, user guides and other product-related documentation, technical support, video tutorials, training and certification, user forums, professional consultation, warranty support, indemnification, technical notes, release notes, articles, etc., for utilizing the Jumio Accused Instrumentalities.

81.     Jumio's actions constitute direct infringement, contributory infringement, and/or active inducement of infringement of at least Claim 10 of the '910 Patent in violation of 35 U.S.C. § 271.

82.     FaceTec has sustained damages and will continue to sustain damages as a result of Defendant's aforesaid acts of infringement.

83.     FaceTec is entitled to recover damages sustained as a result of Jumio's wrongful acts in an amount to be proven at trial.

84.     Jumio's infringement of FaceTec's rights under the '910 Patent will continue to damage Plaintiff's business, causing irreparable harm, for which there is no adequate remedy at law, unless it is enjoined by this Court.

85.     In addition, Jumio has infringed the '910 Patent – directly, contributorily, and by inducement – with full knowledge of the '910 Patent and despite having full knowledge that its actions constituted infringement of that patent. For at least this reason, Jumio has willfully infringed the '910 Patent, entitling FaceTec to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FaceTec asks this Court to enter judgment in its favor and against Defendant Jumio and grant the following relief:

A.     An adjudication that Jumio has willfully infringed and continues to willfully infringe the patent-in-suit.

B.     Orders of this Court temporarily, preliminarily, and permanently enjoining Jumio, its agents, servants, and any and all parties acting in concert with them, from directly or indirectly infringing in any manner any claim of the FaceTec Patents-in-Suit;

C.     An award of damages – in an amount to be proven at trial – adequate to compensate FaceTec for Jumio's infringement of the FaceTec Patents-in-Suit;

D.     A finding that this is an exceptional case and an award of FaceTec's costs and attorney fees;

**COMPLAINT**

E.  A trebling of the damage award to FaceTec;

F.  An assessment and award of pre- and post-judgment interest on all damages

awarded; and

G.  Any further relief that this Court deems just and proper.

Dated: June 14, 2024                    **ONE LLP**

By: */s/ Nathaniel L. Dilger*
    Nathaniel L. Dilger
    Peter R. Afrasiabi
    William J. O'Brien
    Taylor C. Foss

*Attorneys for Plaintiff,*
FaceTec, Inc.

## DEMAND FOR JURY TRIAL

Plaintiff FaceTec hereby demands a trial by jury as to all claims and all issues properly triable thereby.

Dated: June 14, 2024          **ONE LLP**

By: _/s/ Nathaniel L. Dilger_
Nathaniel L. Dilger
Peter R. Afrasiabi
William J. O'Brien
Taylor C. Foss

_Attorneys for Plaintiff,_
FaceTec, Inc.

**COMPLAINT**