Grant E. Kinsel, Bar No. 172407
GKinsel@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East
Suite 1700
Los Angeles, CA 90067
Telephone: 310.788.9900
Facsimile: 310.788.3399
[Additional Counsel on Signature Block]

Attorneys for JUMIO CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FACETEC, INC., | Case No. 3:24-cv-3623-RFL |
| *Plaintiff,* | **JUMIO CORPORATION'S MOTION TO STRIKE FACETEC, INC.'S INFRINGEMENT CONTENTIONS** |
| *v.* | |
| JUMIO CORPORATION, | Date:  February 11, 2025 |
| *Defendant,* | Time:  10:00 a.m. |
| and | Place:  Courtroom 15 |
| IPROOV LTD., | Judge: Hon. Rita F. Lin |
| *Defendant-Intervenor* | |

# TABLE OF CONTENTS

NOTICE OF MOTION ............................................................................................................ iv

RELIEF SOUGHT ................................................................................................................. iv

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................1

I.      INTRODUCTION ....................................................................................................1

II.     RELEVANT FACTS ...............................................................................................2

III.    LEGAL STANDARD ..............................................................................................5

IV.     ARGUMENT ...........................................................................................................6

        A.      FaceTec's Infringement Contentions Should be Struck in Their Entirety.............6

                1.      FaceTec fails to identify the specific accused products............................6

                2.      FaceTec fails to chart any product against every claim limitation. ............8

        B.      At Minimum, FaceTec's Contentions Should Be Struck as to the Jumio
                Showcase Applications and Any Other Jumio Products or Technologies............12

V.      CONCLUSION........................................................................................................15

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Bender v. Maxim Integrated Prods.*,
 No. 09-cv-01152, 2010 WL 1135762 (N.D. Cal. Mar. 22, 2010) ............................................... 5

4

*Blue Spike, LLC v. Adobe Sys., Inc.*,
 No. 14-cv-01647, 2015 WL 335842 (N.D. Cal. Jan. 26, 2015)................................................. 15

5

6

*Cap Co. v. McAfee, Inc.*,
 No. 14-cv-05068, 2015 WL 4734951 (N.D. Cal. Aug. 10, 2015)........................................ 8, 11

7

*Essociate, Inc. v. 4355768 Canada Inc.*,
 No. 14-cv-0679, 2015 WL 12745799 (C.D. Cal. Jan. 14, 2015)............................................... 14

8

9

*Finjan, Inc. v. Proofpoint, Inc.*,
 No. 13-cv-05808, 2015 WL 9023166 (N.D. Cal. Dec. 16, 2015) ............................................... 8

10

*Geovector Corp. v. Samsung Elecs. Co.*,
 No. 16-cv-02463, 2017 WL 76950 (N.D. Cal. Jan. 9, 2017)................................................... 8, 9

11

12

*Innovative Automation LLC v. Kaleidescape, Inc.*,
 No. 13-cv-05651, 2014 WL 5408454 (N.D. Cal. Oct. 23, 2014) ............................................ 6, 7

13

*Mediatek, Inc. v. Freescale Semiconductor, Inc.*,
 No. 11-cv-5341, 2013 WL 588760 (N.D. Cal. Feb. 13, 2013)............................................... 8, 13

14

15

*Netflix, Inc. v. Rovi Corp.*,
 No. 11-cv-06591, 2015 WL 5752432 (N.D. Cal. Apr. 6, 2015)................................................. 7

16

*Network Protection Sciences, LLC v. Fortinet, Inc.*,
 No. 12-cv-01106, 2013 WL 5402089 (N.D. Cal. Sept. 26, 2013)............................................. 8

17

18

*Oracle Am., Inc. v. Google Inc.*,
 No. 10-cv-03561, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011)............................................. 6

19

*Shared Memory Graphics LLC v. Apple Inc.*,
 No. 10-cv-02475, 2011 WL 3878388 (N.D. Cal. Sept. 2, 2011)........................................ 13, 15

20

21

*Shared Memory Graphics LLC v. Apple, Inc.*,
 812 F. Supp. 2d 1022 (N.D. Cal. 2010) .................................................................................... 5

22

*Silicon Labs., Inc. v. Cresta Tech. Corp.*,
 No. 5:14-cv-03227, 2015 WL 846679 (N.D. Cal. Feb. 25, 2015)........................................... 11

23

24

*Sung v. Shinhan Diamond Am., Inc.*,
 No. 14-cv-00530, 2015 WL 12681306 (C.D. Cal. June 9, 2015)............................................ 10

25

*Tech. Licensing Corp. v. Grass Valley USA, Inc.*,
 No. 12-cv-06060, 2014 WL 3752108 (N.D. Cal. July 30, 2014) .............................................. 5

26

27

*Uniloc 2017 LLC v. Apple, Inc.*,
 No. 19-cv-01904, 2019 WL 8810168 (N.D. Cal. Dec. 16, 2019) ............................................. 7

28

*Vigilos LLC v. Sling Media Inc*,
   No. 11-cv-04117, 2012 WL 9973147 (N.D. Cal. July 12, 2012) ................................................ 6

*Vineyard Investigations v. E. & J. Gallo Winery*,
   No. 1:19-cv-01482, 2024 WL 3536002 (E.D. Cal. July 24, 2024)............................................ 8

*Zuk v. Eastern Pa. Psychiatric Inst. of the Med. College*,
   103 F.3d 294 (3d Cir. 1996) ................................................................................................ 15

**Rules**

Patent L.R. 3-1 ........................................................................................................................ 1, 5

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that Defendant Jumio Corporation ("Jumio") hereby moves to strike the Patent L.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions served by Plaintiff FaceTec, Inc. ("FaceTec") on November 12, 2024, and seeks a hearing on the Motion on February 11, 2025, at 10:00 AM, or as soon thereafter as it may be heard by the Court, located at the San Francisco Federal District Courthouse, 450 Golden Gate Avenue, Courtroom 15, 18th Floor before the Honorable Rita F. Lin. Jumio's Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the accompanying Declaration of Jessica J. Delacenserie and attached exhibits, the pleadings and papers on file, and such other materials and oral arguments as the Court may permit.

**RELIEF SOUGHT**

Jumio seeks an order striking FaceTec's November 12, 2024, Patent L.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions in their entirety because they violate the Patent Local Rules at least by failing to identify (1) "each accused apparatus, product, device, process, method, act, or other instrumentality … as specific as possible" and (2) "specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1(b), (c). At a minimum, Jumio seeks an order striking FaceTec's Infringement Contentions with respect to the Jumio Showcase applications , as well as any other Jumio technology or product that does not use iProov's liveness technology, because, in addition to violating the Patent Local Rules, FaceTec's contentions demonstrate that FaceTec does not have a good-faith factual basis for accusing any such products of infringement pursuant to Fed. R. Civ. P. 11. Jumio further seeks an order denying FaceTec leave to amend its Infringement Contentions with respect to the Jumio Showcase applications, as well as any other Jumio technology or product that does not use iProov's liveness technology.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Infringement contentions are intended to put a defendant on notice of what is being accused of infringement and why. They do this by providing, among other things, (1) an "identification" of "each accused apparatus, product, device, process, method, act, or other instrumentality" that is "*as specific as possible*," and (2) a "chart identifying *specifically where and how* each limitation of each asserted claim is found within *each* Accused Instrumentality."[1] Patent L.R. 3-1. But FaceTec's infringement contentions do neither of these things, and thus, fail to provide adequate notice to Jumio or justify discovery regarding any Jumio technology.

First, FaceTec fails to identify the specific products it purports to accuse of infringement. Instead, FaceTec identifies broad swaths of product categories based on the unsupported, blanket assertion that all encompassed products include a functionally equivalent "liveness detection" feature. Courts in this District consistently find that non-specific definitions of accused products—particularly when based on little more than blanket allegations that all such products work the same way—violate the Patent Local Rules. The Court should so find here. FaceTec also fails to chart *any one* (much less *each*) of the so-called "Jumio Accused Instrumentalities" against each limitation of each asserted claim. Instead, FaceTec mixes and matches information regarding *different* products that use *different* liveness technologies developed by *different* companies for the various claim limitations. This too contravenes the Patent Local Rules and is an independent basis on which the Court should strike FaceTec's infringement contentions.

At a minimum, the Court should strike FaceTec's infringement contentions to the extent they accuse (or contemplate accusing in the future) products Jumio developed on its own, including, *inter alia*, "Jumio Showcase" applications and Jumio's proprietary liveness-detection technology ("Jumio Liveness"). The accused Jumio Showcase applications do not incorporate iProov's liveness-detection technologies, yet FaceTec's apparent infringement theories for these applications depend heavily (at times, exclusively) on information about such unrelated technologies.

---

[1] All emphasis added unless otherwise indicated.

Given FaceTec's indisputable failure to map any Jumio Showcase application against every limitation of the asserted claims, the Court should strike FaceTec's Showcase-based allegations. As for Jumio Liveness, FaceTec admits that it lacks a Rule 11 basis to accuse the technology of infringement. FaceTec thus expressly excludes Jumio Liveness from its sweeping definition of "Jumio Accused Instrumentalities," yet simultaneously contends that it should be entitled to discovery on this (and possibly other) technology and products that use such technology. In other words, FaceTec seeks to leverage generic allegations to obtain discovery into unaccused products using unaccused Jumio Liveness technology. But that is not how this process works: discovery is intended to gather evidence supporting the claims already made, not to develop new theories. Given FaceTec's admission that it currently has no basis to accuse Jumio Liveness of infringement, the Court should also strike any allegations that purport to accuse this technology itself, as well as any products that incorporate such technology.

## II.    RELEVANT FACTS

Jumio is a leading provider of online identity-verification services, including liveness detection to prevent spoofing and deepfakes. Beginning in early 2021, Jumio contracted with iProov for iProov to provide some liveness-detection services to some Jumio customers. Today, some customers still use versions of Jumio's platform that implement iProov's liveness-detection technology, but beginning in October 2023, Jumio started migrating its customers to its latest platform that implements Jumio's own proprietary liveness technology, Jumio Liveness.

On June 14, 2024, FaceTec filed this lawsuit alleging that Jumio infringes four of its patents, primarily, by "using iProov's infringing technology." Dkt. 1, ¶ 32; *see generally id.* Although the Complaint included vague allegations regarding "recently introduced Jumio-branded liveness detection technologies," *id.*, ¶ 32, the accompanying charts largely focused on liveness-detection technology provided by iProov, which is the subject of another patent-infringement lawsuit FaceTec brought directly against iProov in the District of Nevada over three years ago,[2] Dkts. 1-5–1-8; *see also*, *e.g.*, Dkt. 45 (FaceTec Request to Dismiss) at 2 ("The products accused

---

[2] *See FaceTec, Inc. v. iProov Ltd.*, Case No. 2:21-cv-02252 (D. Nev.) ("the Nevada case.").

1  of infringement in [the Nevada] case include liveness detection technology that iProov supplies to

2  Jumio and that Jumio provides to many of its customers.").

3    On November 12, 2024, FaceTec served its infringement contentions. These contentions

4  include four claim charts—one for each asserted patent—that purport to address all so-called

5  "Jumio Accused Instrumentalities" together. *See generally* Exs. 3–6 (Infr. Cont., Exs. B–E).[3] Fac-

6  eTec contends that all of the "Jumio Accused Instrumentalities" can be addressed together because,

7  "[w]hile there are minor differences in user interface and data transmission protocols that 'tweak'

8  the Jumio Accused Instrumentalities for different platforms, these changes have no relevant impact

9  on how the Jumio Accused Instrumentalities infringe the FaceTec Asserted Patents." Ex. 2 (Infr.

10  Cont., Ex. A) at 1–2. The majority of the information cited in these charts either comes from iProov

11  documentation or is based on third-party applications that implement iProov's liveness technology.

12  *See* Exs. 3–6. Indeed, many of FaceTec's contentions regarding the '471 and '606 Patents (which

13  are also asserted against iProov in the Nevada case) appear to be lifted directly from infringement

14  contentions FaceTec served in the Nevada case. *Compare* Exs. 3 & 4 *with* Ex. 7 (FaceTec's

15  Amended Inf. Cont. in the Nevada case) at 12–36, 37–77.

16    Critically, however, FaceTec's definitions of the "Accused Instrumentalities" are broad,

17  ambiguous, and encompass products that do *not* use iProov's liveness technology. For instance,

18  FaceTec expressly accuses the Jumio Showcase applications of infringement, Ex. 1 (Infr. Cont.

19  Cover) at 4, but those products do *not* use iProov's liveness technology. Jumio has attempted to

20  correct FaceTec's apparent understanding to the contrary several times in this case (*see*, *e.g.*, Dkt.

21  32 at 5; Dkt. 49 at 1–3, 6–7), most recently in a letter sent to FaceTec's counsel on November 26,

22  2024, explaining that:

23        The Jumio Showcase Applications are merely demonstrative mobile appli-
          cations that Jumio has long provided (for free) to illustrate the look and feel
24        of certain identity-verification solutions from a user's perspective, includ-
          ing liveness detection. Although those applications collect and transmit data
25        to Jumio's servers, they do not provide the user with the result of any
          liveness check(s). Instead, they always display the same "Upload Success-
26        ful" message at the end of a "Liveness Detection" demonstration. A good-

27

28  ———————————
    [3] All exhibits are attached to the Declaration of Jessica J. Delacenserie, filed concurrently herewith.

1  faith pre-suit investigation would have alerted FaceTec to that fact.

2  Prior to releasing Jumio Liveness for commercial use, Jumio updated the
   Jumio Showcase Applications to demonstrate the user experience for this
3  new technology. The Android application was updated on June 28, 2023,
   and the iOS application was updated on June 29, 2023. The timestamps as-
4  sociated with the screen recordings FaceTec created, uploaded to YouTube,
   and now points to in its claim charts regarding these applications confirm
5  that the subject of those recordings are the updated Jumio Showcase Appli-
   cations. This is also apparent from the user interfaces shown in the screen
6  recordings.

7  Dkt. 54-2 at 4.[4] FaceTec further includes a "catch-all" in its definitions of the Accused Instrumen-

8  talities that encompass "[a]ny other Jumio product or service that (1) prompts a user to position

9  their face at more than one distance from a user's device camera, (2) utilizes the user's device

10  camera to capture face image data at least two distances between the user's face and the device's

11  camera, and (3) thereafter compares the face image data to evaluate user 3-dimensionality." Ex. 1

12  (Infr. Cont. Cover) at 5. In other words, FaceTec attempts to capture any number of unidentified,

13  undescribed, and uncharted products based on a vast over-simplification of the asserted claims.

14  FaceTec's contentions appear limited only by what is *not* accused. Specifically, notwith-

15  standing its sweeping definitions, "FaceTec does not presently include Jumio Liveness as an Ac-

16  cused Instrumentality." Ex. 1 (Infr. Cont. Cover) at 4–5. Indeed, FaceTec has represented to the

17  Court on numerous occasions that it has *no factual basis* for accusing Jumio Liveness of infringe-

18  ment. *See, e.g.*, Dkt. 51 at 2 ("FaceTec has not been able to independently confirm, from Jumio or

19  otherwise, that recently introduced Jumio products do not infringe, and FaceTec might need to

20  contemplate asserting its rights if it later finds that the representations of Jumio's counsel about

21  non-infringement have been inaccurate."), 4 ("dismissal without prejudice will protect FaceTec's

22  interests in case it *later learns* that Jumio's non-iProov product do infringe"); Dkt. 45 at 2–5. But

23  in the same breath, FaceTec contends that it should be allowed to add Jumio Liveness as an accused

24  instrumentality "if discovery or further investigation indicates that [Jumio's counsel's] representa-

25  tions [that Jumio Liveness does not infringe] are not correct." Ex. 1 (Infr. Cont. Cover) at 5.

26

27  ──────────
   [4] In opposing Jumio's recently filed motion to stay, FaceTec takes the incredible position that the
   explanations provided in Jumio's Rule 11 letter somehow confirm FaceTec's earlier view that
28  products based on Jumio technologies infringe. Dkt. 62 at 10.

At base, FaceTec defines the Accused Instrumentalities broadly—encompassing numerous *different* products that use *different* liveness technologies developed by *different* companies, as well as other *unidentified* products—and addresses them collectively, thereby shirking its obligations not only to explain *how* each product purportedly infringes its patents, but to expressly and specifically identify the universe of products accused of infringement in the first instance.

## III.   LEGAL STANDARD

Patent Local Rule 3-1 requires a plaintiff claiming patent infringement to serve a "Disclosure of Asserted Claims and Infringement Contentions" early in the case. This disclosure must identify, "[s]eparately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality" that is accused of infringement, as well as "specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1(b), (c).

"The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Bender v. Maxim Integrated Prods.*, No. 09-cv-01152, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010). To be sure, the Rules do not require—and Jumio is not asking that the Court require—FaceTec "to prove its infringement case" in its Contentions. *Tech. Licensing Corp. v. Grass Valley USA, Inc.*, No. 12-cv-06060, 2014 WL 3752108, at *2 (N.D. Cal. July 30, 2014). But "all courts agree that the degree of specificity under [Rule 3-1] must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement," and to "raise a reasonable inference that all accused products infringe." *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010); *Netflix, Inc. v. Rovi Corp.*, No. 11-cv-06591, 2015 WL 5752432 at *2 (N.D. Cal. Apr. 6, 2015). To satisfy this burden, a plaintiff must "disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available." *Tech. Licensing*, 2014 WL 3752108, at *2.

1    **IV.    ARGUMENT**

2        **A.    FaceTec's Infringement Contentions Should be Struck in Their Entirety**

3        FaceTec's infringement contentions should be struck in their entirety for two independent

4    but related reasons. First, FaceTec fails to expressly identify the products accused of infringement,

5    and instead accuses sweeping categories of products identified by vague descriptions of their pur-

6    ported features, untethered to the specific requirements of the asserted claims. Second, FaceTec

7    fails to chart a single accused product—let alone all of them—against each limitation of each as-

8    serted claim. FaceTec instead summarily contends that all so-called "Accused Instrumentalities"

9    operate in the same way, and presents charts that mix-and-match different products and technolo-

10   gies for various limitations. As such, FaceTec has failed to provide sufficient notice as to *what* it

11   contends infringes, much less *why*.

12            **1.    FaceTec fails to identify the specific accused products.**

13       FaceTec's failure to specify the products it accuses of infringement should, alone, be dis-

14   positive. It is well established that "[r]eferring to the accused instrumentalit[ies] by either broad

15   categorical descriptions or by way of representative examples is prohibited by the Patent Local

16   Rules." *Innovative Automation LLC v. Kaleidescape, Inc.*, No. 13-cv-05651, 2014 WL 5408454,

17   at *2 (N.D. Cal. Oct. 23, 2014); *cf. Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561, 2011 WL

18   4479305, at *2 (N.D. Cal. Sept. 26, 2011) ("[t]he Patent Local Rules require[] *specific* identifica-

19   tion of particular accused products. They [do] not tolerate broad categorical identifications … nor

20   [do] they permit the use of mere representative examples …. [A] full list of accused products must

21   be disclosed as part of a party's infringement contentions." (emphasis in original)).

22       Indeed, courts in this District consistently strike contentions that merely present a "general

23   list of products by category or functionality." *Vigilos LLC v. Sling Media Inc*, No. 11-cv-04117,

24   2012 WL 9973147, at *4 (N.D. Cal. July 12, 2012). Below are just a few examples of accused-

25   product identifications that have been found insufficient under the Patent Local Rules:

26   - "all Slingbox products (including Slingbox SOLO and Slingbox PRO–
       HD), all Sling Adapter products, and all SlingLoaded products … using
27       Placeshifting/TV Everywhere technology." *Id.* at *3–4.

     - "the Kaleidescape home entertainment systems (including Kaleidescape
28       servers, players, disc vaults, and Kaleidescape Store) that download,

store, and stream digital video and audio content (the 'Kaleidescape Home Entertainment System')." *Innovative Automation*, 2014 WL 5408454, at *2.

- "electronic devices that use Apple's AirDrop feature to share between devices photos, videos, contacts, voice memos, and location … [or include Apple's Continuity feature]. *Uniloc 2017 LLC v. Apple, Inc.*, No. 19-cv-01904, 2019 WL 8810168, at *1 (N.D. Cal. Dec. 16, 2019).

- "any processor, computer, server farm, cloud platform, or other equipment relating to the Netflix service … [or] any software relating to the Netflix service …, including application(s) … , website software cloud service, or server software …, whether located on or in communication with Netflix Hardware or a client device, such as, but not limited to, television(s), media device(s), computer(s), tablet(s) or handheld device(s)." *Netflix*, 2015 WL 5752432, at *3.

FaceTec's identification of accused products mirror these improper identifications. Specifically, FaceTec accuses:

- "*All Jumio products and services* that include or use technology of the kind referred to by Jumio or by its vendor iProov Ltd. as 'Liveness Assurance,' 'Basic Face Verifier,' or 'Express Liveness.'"

- "*All Jumio products and services* that include, use, or perform services or technology of the kind referred to by Jumio as 'Liveness Checks.'"

- "*All Jumio products and services* that include, use, or perform services or technology of the kind referred to by Jumio as 'Liveness Detection,' 'Jumio's liveness detection,' 'Jumio's state-of-the-art liveness detection,' 'Selfie + Liveness Check,' or the like."

- "*All Jumio products and services* that are designated by Jumio as, or that include, use or perform services or technologies of the kind referred to by Jumio as, 'Jumio Showcase' or 'App Showcase.'"

- "*Any other Jumio product or service* that (1) prompts a user to position their face at more than one distance from a user's device camera, (2) utilizes the user's device camera to capture face image data at least two distances between the user's face and the device's camera, and (3) thereafter compares the face image data to evaluate user 3-dimensionality."

- "Any inclusion of, provision for, or use of any of the foregoing in, on, or via Jumio's Netverify or KYX platform or *any other Jumio platform*."

Ex. 1 (Infr. Cont. Cover) at 3–5. FaceTec further states that "Accused Instrumentalities *may also* include Jumio products and services that are designated by Jumio as, or that include, use, or perform services or technology of the kind referred to by Jumio as 'Jumio Liveness' … *if* discovery or further investigation indicates that [Jumio's] representations [regarding non-infringement] are not correct." *Id.* at 4–5.

By presenting such broad and ambiguous categories of products and services, FaceTec "appears to be asking that [Jumio] conduct [FaceTec's] pre-filing investigation for it. The Local Rules

do not envision nor permit such a process." *Mediatek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341, 2013 WL 588760, at *2 (N.D. Cal. Feb. 13, 2013). FaceTec "carries the burden to identify accused devices"; Jumio "should not have to guess at which of its technologies are encompassed by" FaceTec's contentions. *Vineyard Investigations v. E. & J. Gallo Winery*, No. 19-cv-01482, 2024 WL 3536002, at *5 (E.D. Cal. July 24, 2024) (cleaned up). But that is exactly what FaceTec's contentions require.

Accordingly, FaceTec's infringement contentions should be struck for failing to identify the specific products accused of infringement.

### 2.    FaceTec fails to chart any product against every claim limitation.

FaceTec's failure to map any accused product (much less all of them) to each limitation of each asserted claim is another, independent basis for striking its contentions. Courts in this District have made abundantly clear that "[f]or infringement contentions to satisfy the Local Rule, 'plaintiff must compare an accused product to its patents on a claim by claim, element by element basis for at least one of … defendant's products.'" *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808, 2015 WL 9023166, at *1 (N.D. Cal. Dec. 16, 2015). "While under certain circumstances a plaintiff may use a single chart to chart a number of representative products, plaintiff must still, at a minimum, '*chart a single product against all elements*.'" *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-cv-02463, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017) (quoting *Cap Co. v. McAfee, Inc.*, No. 14-cv-05068, 2015 WL 4734951, at *2 (N.D. Cal. Aug. 10, 2015)). And "representative products may only be charted 'when supported by adequate analysis showing that the accused products share the same critical characteristics.'" *Cap Co.*, 2015 WL 4734951, at *2 (quoting *Network Prot. Scis., LLC v. Fortinet, Inc.*, No. 12-cv-01106, 2013 WL 5402089, at *3 (N.D. Cal. Sept. 26, 2013)). Regardless, a plaintiff cannot satisfy its disclosure obligations "by 'mixing and matching between different accused products' in its claim charts, as '[i]nfringement cannot be shown by a muddled hash of elements from different products.'" *Geovector*, 2017 WL 76950, at *4 (quoting *Cap Co.*, 2015 WL 4734951, at *2).

The circumstances here are on all fours with those in *Geovector*. There, the Court first found plaintiff's contentions deficient because, although they "identifie[d] some accused products

by name or model number," those products were identified as mere "examples," and plaintiff accused far broader categories of products of infringement. *Geovector*, 2017 WL 76950, at *4. When the court then reviewed the accompanying claim charts, it found those deficient as well because they "mixe[d] and matche[d] elements of Samsung products, third-party applications, and sometimes fail[ed] to identify any particular product at all." *Id.* The Court held that such a "hodgepodge of different attributes from various different accused products and third-party sources is insufficient to chart a single product against all elements of Claim 1." *Id.*

FaceTec's claim charts suffer the same fatal flaws. Rather than chart a single accused product against each and every element of the asserted claims, FaceTec relies upon no less than *five* distinct products[5] mixed-and-matched among various claim limitations:

> (1) A browser implementation of a third-party application using iProov liveness technology. *See, e.g.*, Ex. 3 at 1, 3–5, 9–10, 15–16, 24–25, 27–28.
>
> (2) An Android implementation of a third-party application using iProov liveness technology. *See, e.g.*, *id*. at 6–7, 21–22.
>
> (3) An iOS implementation of a third-party application using iProov liveness technology. *See, e.g.*, *id*. at 10–12.
>
> (4) An Android implementation of the Jumio Showcase application that does *not* use iProov liveness technology. *See, e.g.*, *id*. at 2, 7–8, 13, 17.
>
> (5) An iOS implementation of the Jumio Showcase application that does *not* use iProov liveness technology. *See, e.g.*, *id*. at 2, 17–21.

Worse still, as with *Geovector*, there are certain claim limitations for which FaceTec fails to identify *any* product. For instance, every asserted independent claim requires "determining" or "verifying" the three-dimensionality of a user and, for some, authenticating a user. For each of these limitations, FaceTec summarily contends that it "tested the Jumio Accused Instrumentalities"

---

[5] Most of the material cited in FaceTec's claim charts is in the form of screenshots from videos FaceTec created—purportedly walking through the liveness-detection procedures of these products—and uploaded to YouTube or a private (and inaccessible) Google Drive account. FaceTec's claim charts fail to clearly identify which product is associated with each screenshot, but they can be distinguished based on aspects of the user interface: applications using iProov-based software display a misshaped oval with a dark or transparent background, and Jumio Showcase applications have a standard oval with a white background. And although some screenshots are miscited, iProov-based applications appear to be shown in YouTube videos with URLs ending in "eESja5Jh0oY" and "fTgILji9CU8," and Jumio Showcase applications appear to be shown in YouTube videos with URLs ending in "MBImyUmJEm0" and "oIcsGLebgc0."

1   to evaluate whether they performed the claimed functionality. *See, e.g.*, Ex. 3 at 22–23; Ex. 4 at

2   22–23, 33–34; Ex. 5 at 23, 52, 77–78, 102–03; Ex. 6 at 23. But FaceTec does not specify *which*

3   instrumentalities were supposedly tested or offer any evidence of the supposed tests performed.

4   This failure to detail testing is particularly stark with respect to the Jumio Showcase appli-

5   cation because any suggestion that these applications meet the "determining" or "verifying" steps

6   would be demonstrably false. As Jumio has explained to FaceTec several times, "[t]he Jumio

7   Showcase Applications are merely demonstrative mobile applications … to illustrate the look and

8   feel of certain identity-verification solutions from a user's perspective," and, thus, "do not provide

9   the user with the result of any liveness check(s)." *See, e.g.*, Dkt. 54-2 at 4. In other words, they

10  *cannot* demonstrate that Jumio technology makes any sort of "determination" or "verification" of

11  three-dimensionality, as required by the claims. Instead, they always display the same "Upload

12  Successful" message at the end of the demonstration—even when presented with an image (as

13  opposed to the face of a real, three-dimensional user).[6, 7] *Id*. To the extent FaceTec claims to have

14  "tested" the Jumio Showcase applications and contends that such testing somehow showed that

15  these demonstrative applications "determine" or "verify" the three-dimensionality of a user, Jumio

16  is entitled to know specifically *how* FaceTec tested them and what the tests showed. Blanket as-

17  sertions that tests were conducted are insufficient. *Sung v. Shinhan Diamond Am., Inc.*, No. 14-cv-

18  00530, 2015 WL 12681306, at *4 (C.D. Cal. June 9, 2015) (finding investigation of one product

19  as summarily being representative of 40 products insufficient).

20  FaceTec tries to justify its mixing-and-matching of iProov-based products and the Jumio

21  Showcase applications by contending that all "Jumio Accused Instrumentalities operate in the

22  same infringing manner" and "share the same critical characteristics." Ex. 2 (Infr. Cont., Ex. A) at

23  1–2. But FaceTec never explains *how* the Jumio Showcase applications—which do not use any

24

25  ───────────────

    [6] Notably, FaceTec's claim charts do not depict this final step in the demonstration.

26  [7] In opposing Jumio's motion to stay, FaceTec argued that it is "meaningless" that FaceTec cites
    a mere demonstrative because "[i]f the demonstration shows how Jumio's technology

27  works … then it can show infringement." Dkt. 62 at 10, n.3. But the Jumio Showcase demonstra-
    tive applications do ***not*** show that any Jumio products or technology perform, *inter alia*, "deter-

28  mining" or "verifying" the three-dimensionality of a user.

iProov technology—could plausibly "operate in the same infringing manner" as the accused iProov-based products, or *what* "critical characteristics" these products purportedly share. *Id*; *Cap Co.*, 2015 WL 4734951, at *2 (representativeness of a product "cannot just be based on the patentee's say-so"); *Silicon Lab'ys Inc. v. Cresta Tech. Corp.*, No. 14-cv-03227, 2015 WL 846679, at *2 (N.D. Cal. Feb. 25, 2015) ("[I]n order to rely on a claim that one accused product represents another for purposes of Rule 3-1(c), a patentee must do more than state as much. A patentee must state how."). The same is true for any "other Jumio product or service" that may fall within FaceTec's Accused Instrumentalities catch-all definition. Ex. 1 (Infr. Cont. Cover) at 5. Indeed, if FaceTec cannot specifically identify such products, it can hardly have evaluated their "critical characteristics" or whether they "operate in the same manner" as any other product.

The only thread FaceTec offers is an allegation that all Accused Instrumentalities "(1) prompt a user to position their face at more than one distance from a user's device camera, (2) collect face image data of the user from at least two distances between the user's face and the device camera, and (3) thereafter utilize this face data collected from at least two different distances to confirm the 3-dimensionality of the user seeking verification." Ex. 2 (Infr. Cont., Ex. A) at 2. But none of the asserted claims are so broad as to be practiced by performing this generalized three-step process, nor does FaceTec offer any support for its apparent position that all products capable of performing such a process must "operate in the same manner as it relates to infringement." *Id*. In any event, FaceTec presents zero evidence that the Jumio Showcase applications actually "confirm the 3-dimensionality of the user seeking verification"—as explained above, they do not.

In sum, FaceTec's brazen assertion that its "use of representative claim charts"—comprising a hodgepodge of *different* (sometimes unidentified) products that use *different* liveness technologies developed by *different* companies—"meets FaceTec's obligations under the Local Patent Rules" is based on nothing more than its say-so. Ex. 2 (Infr. Cont., Ex. A) at 2. Accordingly, FaceTec's admitted failure to provide charts "identifying specifically *where* and *how* each limitation of each asserted claim is found within *each* Accused Instrumentality" directly contravenes Patent Local Rule 3-1(c) and its contentions should be struck in their entirety.

**B.     At Minimum, FaceTec's Contentions Should Be Struck as to the Jumio Showcase Applications and Any Other Jumio Products or Technologies**

The inclusion of Jumio Showcase applications in FaceTec's infringement contentions—and reservations to also add Jumio Liveness later—is nothing more than a ploy to obtain discovery into Jumio technologies that FaceTec failed to adequately investigate before filing this lawsuit. Simply put, these demonstrative applications—which are available free of charge and do not actually provide any identity verification services, including liveness detection—are not FaceTec's ultimate target. And even if they were, FaceTec's infringement allegations as to such applications are facially implausible. Moreover, FaceTec is not entitled to embark on a fishing expedition into new infringement theories as to *other* Jumio products that do provide liveness detection services using the *unaccused* Jumio Liveness technology (as opposed to iProov's liveness detection technology), which it neither identifies nor charts in its contentions. Any reference to the Jumio Showcase applications, Jumio Liveness, and any other yet-to-be-identified Jumio product or technology should therefore be struck from FaceTec's infringement contentions without leave to amend.

Importantly, FaceTec concedes that it "does not presently include Jumio Liveness as an Accused Instrumentality" because it has no factual basis for doing so. Ex. 1 (Infr. Cont.) at 4–5; *see also*, *e.g.*, Dkt. 51 at 2 ("FaceTec has not been able to independently confirm, from Jumio or otherwise, that recently introduced Jumio products do not infringe…"), 4 ("dismissal without prejudice will protect FaceTec's interests in case it *later learns* that Jumio's non-iProov product do infringe"); Dkt. 45 at 2–5. Indeed, FaceTec does not identify a single product that uses Jumio Liveness to perform liveness detection services in its contentions, and concedes that it did not investigate any such product—or Jumio Liveness itself—prior to filing this lawsuit. *E.g.*, Dkt. 45 at 2 ("FaceTec's counsel had not found and was not aware of such new Jumio technology as of the filing of the complaint. In fact, we still have not located it in use…"); Dkt. 51 at 3 ("FaceTec still has not gained access for testing of these non-iProov products").[8]

---

[8] FaceTec claims that it was unable to investigate Jumio Liveness and/or products that use such technology to perform liveness checks before initiating this litigation, asserting that this "technology was not introduced until after FaceTec's investigation underlying this lawsuit." Dkt. 45 at 2; *see also* Dkt. 51 at 3. FaceTec's assertion is simply incorrect; Jumio started transitioning customers

Striking FaceTec's contentions to the extent they broadly read on products that use technology FaceTec itself admits it does not accuse—and denying FaceTec discovery regarding such unaccused technology—should be uncontroversial. *See, e.g., Mediatek*, 2013 WL 588760, at *1 ("[E]ven if [Plaintiff] did not identify a [Defendant] product by name in its [infringement contentions], it demands that [Defendant] produce discovery as to that unnamed product if [Defendant] determines that the product contains one of the above-identified features. The Court is unpersuaded that [Plaintiff] is entitled to such broad discovery because Plaintiff had failed to previously identify the products."); *Shared Memory Graphics LLC v. Apple Inc.*, No. 10-cv-02475, 2011 WL 3878388, at *7 (N.D. Cal. Sept. 2, 2011) (rejecting a request for discovery into accused products *before* sufficiently mapping the accused products to the claims as a "violat[ion] [of] Local Rule 3–1(c).").

Although FaceTec does identify the Jumio Showcase applications as Accused Instrumentalities, its contentions fail to map these applications against every limitation of the asserted claims, much less "raise a reasonable inference" of infringement. *Shared Memory Graphics*, 812 F. Supp. 2d at 1025. For example, as explained above, FaceTec does not identify *anything* in the Jumio Showcase applications showing that they "determine" or "verify" three-dimensionality of a user, as required by every asserted independent claim. *See, e.g.*, Ex. 3 at 22–23; Ex. 4 at 22–23, 33–34; Ex. 5 at 23, 52, 77–78, 102–03; Ex. 6 at 23. Nor could it because, once again, the Jumio Showcase applications do not actually provide liveness detection services and, thus, do not provide the user with the result of any liveness check(s). *See supra* Section IV.A.2. Further, even when FaceTec identifies a Jumio Showcase application in connection with a given limitation, it relies primarily on information regarding *iProov* liveness technology to allege infringement for all so-called "Accused Instrumentalities" collectively.

As just one example, FaceTec's contentions rely almost exclusively on iProov technology to determine whether "expected differences," "expected distortion," or "expected type of distorting

---

to Jumio Liveness back in 2023. It is also irrelevant and does not relieve FaceTec of its Rule 11 obligation to form a good-faith basis for alleging infringement *before* filing suit. In any event, there is no excuse for FaceTec's failure to investigate such technology before serving its infringement contentions nearly five months after filing the complaint and Jumio should not be required to bear the burden of FaceTec's failure to do so.

change" exist between two images, as required by every asserted independent claim. For these limitations, FaceTec first asserts that the "Jumio Accused Instrumentalities operate using a neural network," which FaceTec sometimes refers to as the "Jumio Neural Network" and other times as the "iProov Neural Network". Ex. 3 at 17–18; Ex. 4 at 17–18, 34; Ex. 5 at 18, 47, 72–73; Ex. 6 at 18. FaceTec's sources for this assertion are (1) an interview with *iProov's* Product and Marketing Director, published by ITSecurity Wire on April 10, 2020, describing how "*iProov leverage[s]* deep learning technologies," and (2) *iProov* documentation describing iProov's "Liveness Assurance" technology. *Id*. Neither source relates to the Jumio Showcase applications, and FaceTec therefore cannot rely on them to accuse these applications of infringement.

FaceTec then asserts that what it calls the Jumio / iProov "Neural Network necessarily analyzes all data provided to it to verify to a high level of confidence that the user is three-dimensional," and, more specifically, that it "internally compares the first data and the second data to identify similarities and differences therebetween." Ex. 3 at 18; Ex. 4 at 18, 34; Ex. 5 at 18, 47, 73; Ex. 6 at 18. FaceTec's sources for this assertion are: (1) a video on *iProov's* website describing *iProov's* "Liveness Assurance" technology and (2) Bates-stamped documents with the prefix "IP" that appear to have been produced by iProov in the Nevada case. *Id*. Once again, neither source relates to the Jumio Showcase applications, and FaceTec therefore cannot use them to prop up its allegations against these applications.

Lastly, FaceTec asserts that the "Jumio Accused Instrumentalities require no change (facial or otherwise) other than a change in distance (and potentially face realignment within the oval) between the user and the device," and, in some instances, includes screenshots from a video demonstration of the iOS Jumio Showcase application. Ex. 3 at 18–21; Ex. 4 at 18–21, 34; Ex. 5 at 18–21, 47–50, 73–76; Ex. 6 at 18–21. More specifically, FaceTec characterizes the included screenshots as showing, *inter alia*, that this application captures two images of a user from two different distances by following a seven-step procedure.[9] *Id*. This is the first (and *only*) reference

---

[9] The seven steps are: (1) "liveness detection is selected," (2) "the user is prompted 'Put your face in the frame,'" (3) "the user is prompted that they are 'Too close,'" (4) "the user is told 'Got it! Let's take another shot,'" (5) "the oval size changes and the user is told they are 'Too close,'" (6) "after the user moves back to frame the face within the oval, the user is told that the program 'Got

1 to a Jumio Showcase application in connection with these limitations. FaceTec's apparent conten-

2 tion that performance of these seven steps "clearly indicate[s] infringement," *id.*, is insufficient

3 because these user-facing steps say nothing about the underlying processing operations—e.g.,

4 whether data is *derived* from the images and *compared*—which are essential to FaceTec's claims.

5         Accordingly, because FaceTec's allegations against the Jumio Showcase applications are

6 facially implausible, they, too, should be struck and FaceTec should be denied discovery into these

7 products. *See Shared Memory*, 2011 WL 3878388, at *5–7 (striking infringement contentions that

8 failed to specify how an accused product met one claim limitation, rejecting arguments that the

9 infringing feature could be assumed based on other evidence); *Zuk v. E. Pa. Psychiatric Inst. of

10 the Med. College*, 103 F.3d 294, 299 (3d Cir. 1996) ("[D]iscovery is not intended as a fishing

11 expedition permitting the speculative pleading of a case first and then pursuing discovery to sup-

12 port it; the plaintiff must have some basis in fact for the action."); *Essociate, Inc. v. 4355768 Can-

13 ada Inc.*, No. 14-cv-0679, 2015 WL 12745799, at *3 (C.D. Cal. Jan. 14, 2015) ("Essociate cannot

14 pin its hopes on discovery and bundle together products that admittedly have the potential to be

15 non-infringing with the single product that Essociate allegedly 'knows' infringes the '660 Patent.

16 Allowing Essociate to cast such a wide net would defeat the purpose of Patent Local Rule 3-1.").

17         Finally, because FaceTec cannot make out a plausible claim against the Jumio Showcase

18 applications and concedes it has no Rule 11 basis to bring a claim against Jumio Liveness or other

19 products based on such technology, FaceTec should not be granted leave to try again. *See Blue

20 Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647, 2015 WL 335842, at *8 (N.D. Cal. Jan. 26, 2015)

21 (striking infringement contentions without leave to amend where amendment would be futile).

22 **V.    CONCLUSION**

23         FaceTec's slapdash approach to its infringement contentions falls far short of the require-

24 ments of the Patent Local Rules. Because FaceTec fails to properly identify the products accused

25 of infringement and fails to chart a single accused product against each and every limitation of the

26 claims being asserted, its contentions should be struck.

27

28 it,'" and (7) "the program indicates that it is 'Analyzing biometric data.'" *See* Ex. 3 at 18–21; Ex. 4 at 18–21, 34; Ex. 5 at 18–21, 47–50, 73–76; Ex. 6 at 18–21.

Dated: January 6, 2025          PERKINS COIE, LLP

                                By: /s/ *Grant E. Kinsel*

                                Grant Kinsel, Bar No. 172,407
                                gkinsel@perkinscoie.com
                                Jessica Delacenserie, *pro hac vice*
                                jdelacenserie@perkinscoie.com
                                Samantha Carl, *pro hac vice*
                                scarl@perkinscoie.com
                                PERKINS COIE LLP
                                1201 Third Ave.
                                Suite 4900
                                Seattle, WA 98101-3099
                                Telephone: 206.359.3500
                                Fax: 206.359.9000

                                David Pekarek Krohn, *pro hac vice*
                                dpekarekkrohn@perkinscoie.com
                                PERKINS COIE LLP
                                33 East Main St.
                                Suite 201
                                Madison, WI 53703-3095
                                Tel: 608.663.7496
                                Fax: 608.283.4496

                                Jessica Kaiser, *pro hac vice*
                                jkaiser@perkinscoie.com
                                Tyler Knox, *pro hac vice*
                                tknox@perkinscoie.com
                                PERKINS COIE LLP
                                1900 Sixteenth St.
                                Suite 1400
                                Denver, CO 80202-5255
                                Tel: 303.454.2911
                                Fax: 303.291.2400

                                Attorneys for JUMIO CORPORATION

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on January 6, 2025, I electronically filed the foregoing

3  document with the Clerk of the Court using the CM/ECF system, which will send

4  notification of such filing to all counsel of record for the parties.

5

6                                        /s/ *Grant E. Kinsel*_____
                                         Grant E. Kinsel

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE
24-cv-3623-RFL