Nathaniel L. Dilger (SBN 196203)
Email: ndilger@onellp.com
Peter R. Afrasiabi (SBN 193336)
Email: pafrasiabi@onellp.com
Taylor C. Foss (SBN 253486)
Email: tfoss@onellp.com
Jennifer A. Mauri (SBN 276522)
Email jmauri@onellp.com
William J. O'Brien (SBN 99526)
Email: wobrien@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone:    (949) 502-2870
Facsimile:    (949) 258-5081

David B. Parker (CA Bar No. 72192)
parker@parkershaffiellp.com
**PARKER SHAFFIE LLP**
800 West 6th St., Suite 500
Los Angeles, CA 90017
Telephone:    (213) 622-4441
Facsimile:    (213) 622-1444

Attorneys for Plaintiff and Counter-Defendant,
FaceTec, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| FACETEC, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JUMIO CORPORATION, a Delaware corporation,<br><br>Defendant,<br><br>*and*<br><br>IPROOV, LTD., a United Kingdom limited company,<br><br>Defendant-Intervenor.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:24-cv-03623-RFL<br>Hon. Rita F. Lin<br><br>**NOTICE OF MOTION AND MOTION TO DISQUALIFY MORRISON & FOERSTER LLP AS COUNSEL FOR JUMIO CORPORATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[DECLARATION OF NATHANIEL L. DILGER AND PROPOSED ORDER SUBMITTED CONCURRENTLY HEREWITH]**<br><br>Date:    July 1, 2025<br>Time:    10:00 a.m.<br>Crtrm:    15, 18th Floor |

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION.................................................................................................................1

II.     DISCUSSION ....................................................................................................................4

        A.      Morrison & Foerster Is Not "New" Counsel, Having Previously
                Represented Jumio in this Litigation, Including Having Previously
                Been and Presently Being Co-Counsel of Record with the Disqualified
                Perkins Firm. .....................................................................................................4

        B.      As Co-Counsel with the Disqualified Perkins Firm, Morrison &
                Foerster Must Also Be Disqualified..............................................................6

        C.      Regardless of Who Jumio Obtains as New Counsel, Neither Perkins nor
                Morrison & Foerster Can Collaborate with New Counsel. ..........................11

III.    CONCLUSION ...............................................................................................................14

1

## TABLE OF AUTHORITIES

2
**Cases**

3
*Advanced Messaging Techs., Inc. v. Easylink Servs. Int'l Corp.*,

4
   913 F. Supp. 2d 900 (C.D. Cal. 2012) ..................................................... 6, 7, 9, 10, 11

5
*In re Airport Car Rental Antitrust Litig.*,
   470 F. Supp. 495 (N.D. Cal. 1979) ........................................................................ 10

6
*Beltran v. Avon Products, Inc.*,

7
   867 F. Supp. 2d 1068 (C.D. Cal. 2012) ................................................................. 8, 9

8
*Canatella v. Krieg, Keller, Sloan, Reilley & Roman LLP*,
   No. C 11-05535 WHA, 2012 U.S. Dist. LEXIS 33606, 2012 WL 847493 (N.D.

9
   Cal. Mar. 13, 2012) ............................................................................................ 9, 10

10
*City & Cty. of S.F. v. Cobra Sols., Inc.*,

11
   38 Cal. 4th 839 (2006) .............................................................................................. 7

12
*Comden v. Sup. Ct. (Doris Day Distrib. Co.)*,
   20 Cal. 3d 906 (1978) ............................................................................................. 10

13

14
*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Systems, Inc.*,
   20 Cal. 4th 1135 (1999) .......................................................................................... 10

15
*Haagen-Dazs Co., Inc. v. Perche No! Gelato, Inc.*,

16
   639 F. Supp. 282 (1986) ......................................................................................... 10

17
*Kirk v. First American Title Ins. Co.*,
   183 Cal. App. 4th 776 (2010) ............................................................................ 6, 11

18

19
*Love v. Permanente Med. Grp.*,
   2013 WL 5273213 (N.D. Cal. Sept. 18, 2013) .................................................... 9,10

20
*Oracle Am. Inc. v. Innovative Tech. Distrib., LLC*,

21
   2011 WL 2940313 (N.D. Cal. July 20, 2011) ..................................................... 9, 10

22
*Pound v. DeMera DeMera Cameron*,
   135 Cal. App. 4th 70 (2005) .......................................................... 7, 8, 9, 10, 11, 14

23

24
*Roberts v. Bisno*,
   2007 Cal. Super. LEXIS 159 (Aug. 31, 2007) ...................................................... 10

25

26
**Other Authorities**

27
California Rules of Professional Conduct, Rule 1.10(a)(2)(ii) .................................... 11

28

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on July 1, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Rita F. Lin in Courtroom 15 of the above captioned court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff and Counter-Defendant FaceTec, Inc. will and hereby does move for an order disqualifying the law firm of Morrison & Foerster LLP from representing Jumio Corporation ("Jumio") in this action, and related relief.

Specifically, this Motion seeks an order:

1.    That Morrison & Foerster LLP, and all attorneys of that firm, be disqualified from representing Jumio in this case;

2.    That all attorneys from Morrison & Foerster LLP and Perkins Coie LLP be ordered to immediately withdraw as counsel of record in this case; and

3.    That Jumio appear through new counsel by an appropriate date certain, or to file a written explanation by that date, as to why new counsel could not be retained by the deadline despite the exercise of diligence; and

4.    That Perkins Coie LLP and Morrison & Foerster be ordered not to collaborate with Jumio's new counsel in relation to this litigation, including by providing any non-public work product or information to such counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Court disqualified FaceTec's former counsel, Perkins Coie LLP, from representing Jumio in this matter.  The Court ordered that Jumio "appear through ***new*** counsel. (ECF No. 94, p. 15 (emphasis added).)  But Jumio has not complied with either the letter or spirit of the Court's order. Instead of new counsel, Morrison & Foerster has appeared to ***again*** represent Jumio in this matter, even though Morrison & Foerster was previously co-counsel of record with the Perkins firm and is therefore subject to the same concerns that led to the disqualification of Perkins. Meanwhile, the Perkins attorneys have not withdrawn as counsel of record, so Perkins and

Morrison & Foerster are again co-counsel. Further—and very worryingly—it appears evident that Perkins intends to share—or has already shared—non-public work product with Morrison & Foerster, even though Perkins itself stated at the disqualification hearing that this would be improper, and even though the Court indicated the same. These developments now place FaceTec in the unfortunate position of again having to seek protection from the Court. For reasons explained in more detail below, the Court should disqualify Morrison & Foerster from representing Jumio in this case and should prohibit both Perkins and Morrison & Foerster from sharing non-public work product and information about the case with Jumio's new counsel.

The Court disqualified Perkins because its prior representation of FaceTec involved matters "substantially related" to this litigation and, through its work on those matters, Perkins obtained "confidential [FaceTec] information that may be material to the subject matter of this litigation." (ECF No. 94, p. 13.)  As the Court noted, access to FaceTec's confidential information "effectively provided Perkins with a head start in this litigation" and made Perkins "better situated to advocate for Jumio." (*Id.* at pp. 11-12.) To prevent this obvious unfairness to FaceTec, the Court found disqualification to be the only proper remedy.  Jumio is effectively attempting to undermine this remedy, however, by attempting to use the Perkins firm's former co-counsel instead of "new" counsel and by allowing Perkins to share with Morrison & Foerster the tainted work product that all parties and the Court have already agreed could not be shared following disqualification.  As explained further below, the same concerns that led to the disqualification of Perkins apply to Morrison & Foerster as well.  Far from being "new" counsel as ordered by the Court, Morrison & Foerster has *already* appeared in this case as counsel for Jumio, and Morrison & Foerster was co-counsel with the now-disqualified Perkins firm for approximately two months prior to Morrison & Foerster's withdrawal.  And now, with its reappearance in this matter Morrison & Foerster has resumed its role as co-counsel with the Perkins firm, which, despite this Court's disqualification order *still* has not withdrawn from its representation of Jumio in this matter.  Attempting to revert to Jumio's former counsel and Perkins's former and current co-counsel does not comply with either the letter or the spirit of the Court's order to obtain "new" replacement counsel.  Even apart from Jumio's failure to comply with the express language of the

2

Court's order, the same concerns that led to the vicarious disqualification of the entire Perkins firm apply with equal weight to Morrison & Foerster as Perkin's former and current co-counsel.  While California authority on this issue is (not surprisingly) sparse, several California courts have considered the question of "vicarious disqualification" of co-counsel and have found **no** reasoned distinction between vicariously disqualifying the entirety of a tainted attorneys' firm as compared to vicariously disqualifying co-counsel firms. The same considerations that required disqualification of the entire Perkins firm mandate disqualification of its co-counsel.  Allowing Morrison & Foerster to reappear as counsel for Jumio would result in the same risk of misuse of FaceTec's previously-shared confidential information to gain an unfair "head start" in this litigation.  (ECF No. 94, pp. 11-13.)  And this is true notwithstanding any subjective, self-serving, and tightly-hedged assertion by Morrison & Foerster that it did not substantively discuss this litigation with Perkins "prior to withdrawing." Not only does Morrison & Foerster's statement leave open the probability that Morrison & Foerster has discussed this case with Perkins or been provided with Perkins' internal work product **after** the date of Morrison & Foerster's initial withdrawal, but California courts have applied an "irrebuttable presumption" that confidential information has been shared. Accordingly, FaceTec need not shoulder the usually-impossible burden of proving that opposing counsel actually shared confidential information to justify disqualifying Morrison & Foerster.

At the hearing on FaceTec's motion to disqualify the Perkins firm, Jumio, FaceTec, and the Court all agreed that disqualification of Perkins would mean, not only that Perkins could not continue to represent Jumio, but also that Perkins could not share its non-public work product with, or otherwise provide counsel to, Jumio's replacement counsel.  But Perkins now ignores its representations to the Court and has stated its intention to do exactly what it represented to the Court and FaceTec that it could not. Reversing course from the disqualification hearing, Perkins has now stated that it intends to coordinate with replacement counsel by providing Morrison & Foerster with attorney work product such as draft, non-public and unfiled disclosures and declarations, prior art search results, and other internal Perkins materials that are likely to reflect the very "head start" identified by the Court and contain "fruit of the poisonous tree" that led to

3

Perkins' disqualification.  Worse, it is unclear from the ambiguous and carefully parsed representations of both Perkins and Morrison & Foerster about their communications whether such improper sharing has *already* occurred. Because of Perkins' disqualification, it should not be doing *any* further work on this matter, including *any* work coordinating with replacement counsel, and it should certainly not be providing replacement counsel with non-public materials such as Perkins' unfiled work product. The insistence of Perkins and Morrison & Foerster on such improper sharing of information has seriously exacerbated the very same problems and unfairness to FaceTec that led to Perkins' disqualification in the first place.

FaceTec thus requests that the Court confirm that its disqualification of the Perkins firm extends also to Perkins' former and present co-counsel, Morrison & Foerster.  The Court should also make clear that, regardless of who Jumio obtains as new counsel, Perkins and Morrison & Foerster cannot participate in any fashion in coordinating with new counsel, including providing any internal or work product materials, discussing the case, or otherwise communicating with new counsel regarding the case.  And while it is hard to understand the necessity for this request, the Court should order that Perkins attorneys must immediately withdraw as counsel of record in this matter.  As the Court and FaceTec noted during the disqualification hearing, new counsel has ready access to the publicly filed materials and can obtain such materials without the need to communicate with or otherwise coordinate with disqualified and withdrawn counsel.

## II.    DISCUSSION

### A.    Morrison & Foerster Is Not "New" Counsel, Having Previously Represented Jumio in this Litigation, Including Having Previously Been and Presently Being Co-Counsel of Record with the Disqualified Perkins Firm.

In the Court's disqualification order, the Court directed that "Jumio is ordered to appear through new counsel by April 30, 2025, or to file a written explanation by that date as to why new counsel could not be retained by the deadline despite the exercise of diligence." (ECF No. 94, p. 15.) But Morrison & Foerster—Jumio's prior counsel and co-counsel with Perkins—is simply not "new" counsel. Morrison & Foerster previously appeared as counsel for Jumio in this *very same* matter—a role it held for at least approximately two months, during which time it acted as

4

1  co-counsel with Perkins.  This included acting as co-counsel with Perkins through at least the

2  planning and drafting of Jumio's Answer and Counterclaims.

3        In late June 2024, Morrison & Foerster partner Kenneth Kuwayti—presently Jumio's lead

4  counsel in this case, who was then lead counsel for Jumio in an ongoing arbitration with

5  FaceTec—approached FaceTec's lead counsel in this litigation, Nate Dilger, to discuss FaceTec's

6  recently-filed patent infringement complaint against Jumio. (Dilger Decl. at ¶ 2.) During his

7  conversation with Mr. Dilger, Mr. Kuwayti indicated that he was representing Jumio in this

8  litigation for at least the purpose of requesting an extension of time to answer FaceTec's

9  complaint. (*Id*.) Mr. Kuwayti further indicated that Morrison & Foerster might be representing

10  Jumio for all purposes in this litigation, but that he was awaiting a decision from Jumio on that

11  issue. (*Id*.) Mr. Dilger agreed to Mr. Kuwayti's request for an extension. (*Id*.)

12        Kenneth Kuwayti of Morrison & Foerster thereafter appeared as counsel for Jumio in this

13  case on July 9, 2024. (ECF No. 14.) This was evidently done during the same period in which

14  Perkins had already started its extensive work related to this matter and the related *inter partes*

15  review petitions. (*See* ECF No. 67-1 (Declaration of Grant Kinsel at ¶ 3 ("Since first being

16  retained in this matter on behalf of Jumio, . . . Perkins Coie has invested more than 2,000 hours in

17  the various matters associated with FaceTec's infringement allegations."); *see also* ECF No. 70-19

18  (Declaration of Grant Kinsel at ¶ 3-5 ("Since July 2024, I have billed more than 200 hours

19  supervising the various FaceTec/Jumio matters . . . . to adequately defend Jumio in this matter . . .

20  this team has invested more than 900 hours. . . . [and] lawyers on our PTAB team have

21  collectively spent nearly 900 hours.").) Jumio thereafter filed a Certificate of Interested Entities

22  and an amended version thereof on August 7 and 9, 2024.  (ECF Nos. 16 & 17.) On August 23,

23  2024, Jumio filed its Answer and Counterclaims. (ECF No. 18.) Only thereafter did Morrison &

24  Foerster file a Notice of Withdrawal. (ECF No. 20.)

25        Because Perkins ***still*** remains counsel of record, Morrison & Foerster's April 8, 2025,

26  reappearance means that it is ***again*** acting as co-counsel with Perkins: despite the March 28, 2025,

27  Order disqualifying the Perkins firm, it has yet to withdraw from this case. (*See* Dilger Decl. at ¶

28  8; *see also* ECF Nos. 95, 96.) And as explained in detail in Section C below, there are strong

1    indications that, since its disqualification, Perkins has collaborated—and intends to continue

2    collaborating—with Morrison & Foerster, including by sharing the same sorts of confidential

3    work product that Perkins partner Grant Kinsel expressly represented to the Court (and the Court

4    agreed) that Perkins could not share.

5            Having previously represented Jumio in this very litigation—during some of the same time

6    Perkins Coie was doing so—Morrison & Foerster is not "new" counsel, and simply reappearing as

7    Jumio's counsel does not comport with the Court's disqualification order.  And as explained

8    further below, this violation is not simply a technical one.  Instead, Jumio's attempt to slot in

9    Morrison & Foerster raises precisely the same concerns and threatens precisely the same

10   unfairness that led to the disqualification of Perkins Coie.

11           **B.      As Co-Counsel with the Disqualified Perkins Firm, Morrison & Foerster Must**

12                   **Also Be Disqualified.**

13           Under California law, the same concerns that required the disqualification of the entire

14   Perkins firm also require the disqualification of its co-counsel, Morrison & Foerster. This is

15   because "***presuming an attorney at one law firm has confidential information requires making***

16   ***the same presumption about another firm that is co-counsel with the tainted attorney***."

17   *Advanced Messaging Techs., Inc. v. Easylink Servs. Int'l Corp*., 913 F. Supp. 2d 900, 909 (C.D.

18   Cal. 2012) (emphasis added). Importantly, that presumption is "***irrebuttable***." *Id*. at 912 (emphasis

19   added); *compare Kirk v. First American Title Ins. Co.,* 183 Cal. App. 4th 776, 801 (2010) (noting

20   that the presumption may be refuted with evidence of a sufficient ethical screen—which is not

21   present here).  Given this irrebuttable presumption, self-serving statements from Morrison &

22   Foerster that it did not substantively communicate with Perkins Coie simply don't matter, even

23   apart from the narrow scope and subjective phrasing of its denial.

24           In *Advanced Messaging*, the court explained the reasoning behind the irrebuttable

25   presumption that attorneys are presumed to have received confidential information in the

26   possession of their co-counsel. "Normally, an attorney's conflict is imputed to the law firm as a

27   whole on the rationale that attorneys, working together and practicing law in a professional

28   association, share each other's, and their clients', confidential information." *Id.* at 910 (quoting

6

1   *City & Cty. of S.F. v. Cobra Sols., Inc.*, 38 Cal. 4th 839, 847 (2006)). Where two firms work as co-

2   counsel, the same rationale applies that attorneys working together— whether within a firm or as

3   co-counsel—share each other's and their clients' confidential information.

4       The Court here applied this very presumption in disqualifying not only Perkins partner

5   Lowell Ness but also the entire Perkins firm.  As explained in the Court's Order disqualifying the

6   firm, in the course of its prior representation of FaceTec, Perkins attorneys would have been

7   "required to learn how FaceTec's ZoOm product worked, and what specific features made it

8   unique, innovative, and profitable," "had access to confidential information about the reasons

9   behind the commercial success of FaceTec's product,"  and "would be expected to have regularly

10  received information about FaceTec's views about what separated ZoOm from prior art systems at

11  the time." (ECF No. 94, pp. 11-12.) The Court found that, "based on the nature of Perkins'

12  representation, there runs a significant risk that the firm received confidential information that may

13  be material to the subject matter of this litigation." (*Id*. at p.13.)

14      This same presumption applies to Perkins Coie's prior and current co-counsel, Morrison &

15  Foerster. As co-counsel with Perkins during critical phases of this case—including currently as

16  well as during the development of Jumio's defenses, counterclaims, and strategies related

17  thereto—Morrison & Foerster is presumed to have the same confidential information as Perkins

18  and must also be disqualified.

19      Other California courts have cited and followed *Advanced Messaging* in disqualifying an

20  attorney based on the presumption imputing a co-counsel's conflict to him or her. In *Pound*,

21  plaintiff's co-counsel Jones was disqualified where Jones consulted once with the conflicted

22  counsel, Bradley, and where Bradley and Jones met with the plaintiffs "a few times." *Pound v.*

23  *DeMera DeMera Cameron*, 135 Cal. App. 4th 70, 74 (2005).  Bradley had been disqualified by

24  virtue of a single one-hour consultation with defendant's counsel three years prior, in which

25  Bradley and defendant's counsel had discussed "topics properly described as attorney work

26  product." *Id*. at 74.  Jones argued that he should not be disqualified vicariously, asserting that—as

27  Morrison & Foerster is expected to assert here—Bradley did not tell Jones "of any facts or legal

28  issues learned from [the defendant] or any other source." *Id*.  The court, however, rejected Jones's

7

arguments and confirmed the need to also disqualify co-counsel to protect client confidences, explaining, "[t]he need to maintain client confidences, as well as our obligation to maintain public confidence in the legal profession and the judiciary, would be defeated if we permitted [co-counsel]'s continued representation of plaintiffs." *Id*. at 78. "The only effective method to protect defendants' confidences from the possibility of inadvertent disclosure is also to disqualify [co-counsel]. . . . it is impossible to conceive a justification for not disqualifying [co-counsel] when he consulted with [conflicted counsel], an attorney who obtained the opponent's confidences, even if [conflicted counsel] never associated into the case." *Id*. The same reasoning applies here and prohibits Perkins Coie's former co-counsel Morrison & Foerster from stepping back into this case as "new" counsel, regardless of any self-serving claim as to what it did or did not discuss with the Perkins firm.

As the foregoing cases illustrate, FaceTec need not prove an actual exchange of confidential information between Perkins and Morrison & Foerster to justify disqualification. Holding otherwise would indeed impose on FaceTec the impossible task of proving what information and communications has been exchanged between opposing counsel—internal information that is obviously unavailable to FaceTec. Accordingly, the court in *Pound* did not attempt to establish the specifics of what was exchanged between Bradley and Jones, but rather relied on the fact that a consultation had occurred between the conflicted counsel and co-counsel, which the court found sufficient to warrant disqualification. *Id*. at 78-79.

The evolution of California law to embrace the Vicarious Disqualification Rule as an irrebuttable presumption has been based on fundamental concepts of fairness as well as the need to maintain public confidence in the legal profession and the judiciary, as reflected in *Pound* and like rulings. Otherwise, clients would be put in the impossible position in which they have no realistic way of proving what communications and documents the disqualified counsel for an opposing party have shared behind the scenes with their co-counsel, which creates the unfair risk and improper appearance of the client's confidential information being used to its disadvantage by former counsel. This "Vicarious Disqualification Rule" has been applied regularly to co-counsel by California state courts and federal courts in the Ninth Circuit. For example, in *Beltran*, co-

counsel was vicariously disqualified based on their collaboration with the conflicted counsel. *Beltran v. Avon Products, Inc.*, 867 F. Supp. 2d 1068, 1084 (C.D. Cal. 2012). Specifically, two of the attorneys at the co-counsel firm— analogously to what occurred here—"collaborated with [conflicted counsel] in the filing of the complaint." *Id*.  Based on this, the Court held that "[i]t is also reasonable to assume that the two law firms engaged in fairly extensive discussions about the case and Plaintiff's litigation strategy before filing their complaint . . . . Even if the [co-counsel] X-Law Group *did not, in fact, acquire confidential information*, their involvement in the case would taint the appearance of probity and fairness of the proceedings." *Id*. (emphasis added).

Similar facts exist here, with Perkins Coie and Morrison & Foerster both representing Jumio and presumably collaborating on the preparation of and filing of Jumio's Answer and Counterclaims in this action.  As noted in *Beltran*, it is both reasonable and appropriate to presume that Perkins and Morrison & Foerster engaged in discussions about the case and—under the Vicarious Disqualification Rule—shared the same confidential FaceTec information that required the disqualification of Perkins Coie.  Morrison & Foerster should therefore also be disqualified.

As other California courts have noted, disqualifying co-counsel under circumstances like these is the only effective method to protect a former client like FaceTec's confidential information from the possibility of inadvertent disclosure. *Pound,* 135 Cal. App. 4th at 78 ("the only effective method to protect [client] confidences from the possibility of inadvertent disclosure is also to disqualify [co-counsel]."); *see also Beltran,* 867 F.Supp.2d at 1084 (disqualifying co-counsel where "their involvement in the case would taint the appearance of probity and fairness of the proceedings.").  Accordingly, under *Advanced Messaging*, *Pound*, and *Beltran*, Morrison & Foerster cannot be the "new" counsel that this Court intended when it entered the Order disqualifying Perkins and must instead be disqualified.

FaceTec anticipates that Morrison & Foerster may cite a line of Northern District of California cases that relied on an out-of-date view of California law.  *See Oracle Am. Inc. v. Innovative Tech. Distrib., LLC*, 2011 WL 2940313, at *5 (N.D. Cal. July 20, 2011); *Canatella v. Krieg, Keller, Sloan, Reilley & Roman LLP*, No. C 11-05535 WHA, 2012 U.S. Dist. LEXIS 33606, 2012 WL 847493, at *2 (N.D. Cal. Mar. 13, 2012); *Love v. Permanente Med. Grp*., 2013

1  WL 5273213, at *6 (N.D. Cal. Sept. 18, 2013); *Haagen-Dazs Co., Inc. v. Perche No! Gelato, Inc.,*

2  639 F. Supp. 282 (1986). But in *Oracle, Canatella*, and *Love*, the courts relied on an outdated

3  view of California law that had been adopted in *In re Airport Car Rental Antitrust Litig.*, 470 F.

4  Supp. 495, 506 (N.D. Cal. 1979), a case from 1979, before the California Court of Appeal

5  weighed in in *Pound v. DeMera DeMera Cameron*, 135 Cal. App. 4th 70, 74 (2005).  The holding

6  in *In Re Airport Car Rental* has never been adopted by the California Supreme Court nor any

7  California appellate court.  Instead, both state and federal courts have since rejected its holding as

8  being inconsistent with the more recent decision in *Pound*.  *See, e.g., Advanced Messaging*, 913 F.

9  Supp. at 910 (rejecting the *In Re Airport Car Rental* line of cases for "not consider[ing] applicable

10 California law" because they "rely heavily on *Airport Car*, which was decided in 1979" and for

11 not considering *Pound*); *Roberts v. Bisno*, 2007 Cal. Super. LEXIS 159, *10 (Aug. 31, 2007)

12 ("Since *In Re Airport Car Rental* was decided, however, California state court cases examining the

13 issue have reached a different result.").  Simply put, while there are two lines of case law on the

14 issue of whether an attorney is presumed to have received confidential information from tainted

15 co-counsel, FaceTec's cited cases relies on the current view of disqualification found in *Pound*, a

16 2005 California appellate decision.

17       Policy factors further militate towards this Court's adoption of the view of disqualification

18 found in *Pound*.  Unlike the *In Re Airport Car Rental* line of cases, the view of disqualification

19 expressed by the *Pound* court and like rulings abides by the mandates issued by the California

20 Supreme Court in seminal cases that address the considerations that must be prioritized when

21 adjudicating on motions to disqualify: "The paramount concern **must** be to preserve public trust in

22 the scrupulous administration of justice and the integrity of the bar. The important right to counsel

23 of one's choice **must** yield to ethical considerations that affect the fundamental principles of our

24 judicial process." *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th

25 1135, 1145 (1999) (emphasis added); *see also Comden v. Sup. Ct. (Doris Day Distrib. Co.)*, 20

26 Cal. 3d 906, 914-915 (1978) (holding that a client's right to be represented by counsel of choice

27 must yield to considerations of ethics that affect the integrity of the judicial process). Safeguarding

28

FaceTec's confidences is paramount, and the only way to ensure the preservation of the same is to disqualify Morrison & Foerster.

Morrison & Foerster might also rely on *Kirk v. First American Title Ins. Co.,* 183 Cal. App. 4th at 801, to argue that the presumption is rebuttable; but any such argument fails.  The court in *Kirk* held merely that the presumption could be refuted with an ethical screen that is "sufficient to meet its purpose: satisfying the trial court that the tainted attorney has not had and will not have any involvement with, or communication concerning, the litigation that would support a reasonable inference that confidential information was or will be disclosed."  *Id.* at 814; *see also* California Rules of Professional Conduct, Rule 1.10(a)(2)(ii). Kirk cannot apply here, were this Court previously held that Perkins' screen "cannot cure the problem." (ECF 94, p. 13.) And Perkins is not currently sequestered by an ethical screen—nor would any ethical screen placed *ex post facto* be sufficient to address the time Morrison & Foerster already spent as Perkins' co-counsel—rendering *Kirk* inapposite.  The Court should apply the law as set forth in *Pound* and confirm that Morrison & Foerster cannot step into the shoes of its conflicted former co-counsel dressed as "new" counsel.

## C.  Regardless of Who Jumio Obtains as New Counsel, Neither Perkins nor Morrison & Foerster Can Collaborate with New Counsel.

Despite previously representing to the Court that an order disqualifying Perkins would result in Perkins being unable to "coordinate with replacement counsel," Perkins has now stated its intention to do exactly what it told the Court that it could not by providing replacement counsel with attorney work product, thus threatening to perpetuate the unfairness that its ethical failures have imposed on its former client.  Courts confirm that disqualified counsel in possession of client confidences are prohibited from interacting with new counsel in any way.  Naturally, this prohibition includes, without limitation, providing new counsel with internal work product.  *See Advanced Messaging Technologies*, 913 F. Supp. 2d at 913. Perkins (and now Morrison & Foerster) should be ordered to stop. At the hearing on FaceTec's motion to disqualify Perkins, Perkins' attorney Grant Kinsel represented to the Court plainly (and correctly) that disqualification

of Perkins would result in the firm's being prohibited from coordinating with replacement counsel or providing them with internal work product:

> [T]he choices that we made in identifying prior art, identifying claim construction positions, understanding Jumio's products, all of that is lost if we are disqualified. . . . And so, once—if the Court were to disqualify us, the information, *the ability to coordinate with replacement counsel for example, would all be lost* and so, all of that would be lost to Jumio.

(Dilger Decl. at Ex. B (February 11, 2025, Hearing Tr. at 44:15-45:2) (emphasis added).)

The Court confirmed the correctness of Mr. Kinsel's conclusion: "Well, the argument is if they have to get new counsel, then that counsel has to start from zero and learn all of that  . . . because they can't use the information that Perkins developed" and "they wouldn't have all of the other background that maybe Perkins has developed that is not reflected in the final work product . . . ." (*Id.* at 48:4-9, 21-24.) Jumio, FaceTec, and the Court thus *all* agreed that, if disqualification were ordered, Perkins would not only be unable to further represent Jumio but would also be unable to share work product with, or otherwise provide counsel to, Jumio's replacement counsel.

Despite this, Perkins and Morrison & Foerster appear to be collaborating to share tainted internal work product amongst themselves.  This not only runs contrary to Perkins' statements to the Court at the disqualification hearing and the Court's confirmation of this prohibition, but also violates the Court's disqualification order, under which Perkins is disqualified and should not be doing *any* legal work on this case, whatsoever.  This includes any legal work involving consultation of replacement counsel and certainly includes sharing tainted internal work product with any such counsel.

Following the order disqualifying Perkins, FaceTec corresponded with Perkins and Morrison & Foerster related to Perkins' intent to provide Morrison & Foerster with tainted internal work product and other materials related to this litigation, and FaceTec's objections thereto.  On April 4, 2025, FaceTec's counsel emailed Mr. Kinsel to ask that Perkins confirm that it would "not disclose, share, or discuss any confidential information or attorney work product or otherwise impermissibly coordinate with Jumio's replacement litigation counsel." (*See* Dilger Decl. at ¶ 4, Ex. C.)  In response, Mr. Kinsel refused to agree with FaceTec's request and instead stated that

12

Perkins intended to provide replacement counsel with internal drafts of litigation documents, such as "claim-construction disclosures—including expert witness declaration(s)—that Jumio *was prepared to exchange* with FaceTec", confidential work product provided to Perkins by third-party vendors ("Prior art searches conducted by third party prior art search firms"), and "[w]ork product/attorney-client privileged materials related exclusively to analysis of Jumio's products." (*Id*. at ¶ 5, Ex. D (emphasis added).) FaceTec's counsel responded on April 16, 2025 to object to Perkins's position and intent to collaborate with Morrison & Foerster: "the Court's disqualification order in no way opened the door for Perkins to continue its representation of Jumio, including by working with Jumio's replacement counsel in *any* manner, much less the manner you've suggested in your email." (*Id.* at ¶ 6, Ex. E.)

While Mr. Kinsel did not further respond to FaceTec, on April 22, 2025, Mr. Kuwayti of Morrison & Foerster emailed FaceTec's counsel to assert that "Morrison and Jumio are committed to an orderly transition of counsel, and to ensuring that Morrison receives no information from Perkins potentially tainted by Perkins' conflict of interest" and that "Morrison had no substantive involvement in litigating the case and no communications with Perkins *prior to withdrawing from the limited purpose appearance*." (*Id*. at ¶ 7, Ex. F (emphasis added).) However, Mr. Kuwayti's statements appear to be carefully crafted and intentionally ambiguous to address only the time frame prior to its August 26, 2024 withdrawal from this case—and conspicuously fail to confirm that Morrison & Foerster has not had any substantive involvement, communications, or received internal work product from Perkins since its initial withdrawal, including after Perkins' disqualification.  Viewed together—Perkins assertion in April 2024 that it would be providing Morrison & Foerster with internal work product and Morrison & Foerster's carefully worded assertion that it had not received communications from Perkins *prior to* August 2024—it appears likely that Perkins and Morrison & Foerster collaborated and shared confidential information *after* Perkins' disqualification.  Morrison &Foerster's most recent actions in this case reasonably raise further suspicion.  On May 1, 2025, Morrison & Foerster filed an Administrative Motion Seeking a Status Conference that—as FaceTec noted in its response to that request—seemed an obvious attempt by Jumio to cut short FaceTec's ability to fully brief the significant issues raised by the

13

improper collaboration between Perkins and Morrison & Foerster. FaceTec opposed that Administrative Motion on May 5, 2025, by, *inter alia*, informing the Court that the issues raised by Morrison & Foerster were critical, could not be resolved through the Court's abbreviated administrative motion procedures, and should be addressed by a properly noticed motion—with which the Court agreed. (ECF Nos. 101, 102.)

That Perkins and Morrison & Foerster appear to be improperly skirting the Court's Order disqualifying Perkins evinces why courts vicariously disqualify co-counsel: sharing of information between firms raises the significant risk that FaceTec's confidential information will be disclosed, inadvertently or otherwise.  In fact, Perkins' failure to file a withdrawal from the case after being disqualified by this Court only heightens this concern—why would Perkins not withdraw immediately after being disqualified other than to improperly coordinate with Morrison & Foerster under cover of attorney-client privilege as co-counsel?  Consistent with the concerns voiced by *Pound* and related decisions, FaceTec has no ability to monitor or prevent impermissible coordination and sharing of tainted work product between Perkins and Morrison & Foerster as co-counsel.  This raises a significant appearance of impropriety and is fundamentally unfair to FaceTec as a former client. The ambiguous responses of both Perkins and Morrison & Foerster to FaceTec's requests for assurances of compliance with the Court's order only underscores the concerns expressed by the courts in case law based on *Pound*.

Perkins must therefore be prohibited from providing new counsel—which cannot and should not be Morrison & Foerster—with attorney work product, including prior art search results and other improper materials, which threaten to further spread the taint that led to the firm's disqualification.  Perkins has been ***disqualified*** and—as a result—should not be doing ***any*** further work on this matter, including ***any*** work coordinating with replacement counsel.  Proceeding otherwise simply ignores the taint that led to disqualification in the first place.

## III.    **CONCLUSION**

For the reasons set forth above, permitting Jumio to rely on Morrison & Foerster as the "new" counsel required by the Court's Order is at odds with the obligation to protect a former client's confidences from inadvertent disclosure, and thus FaceTec respectfully requests that the

14

Court clarify that former co-counsel Morrison & Foerster is not "new" counsel for purposes of the Court's March 28, 2025 Order, that the Court's disqualification order extends also to Morrison & Foerster, and that neither Perkins nor Morrison & Foerster shall collaborate with Jumio's "new" counsel in relation to this litigation, including providing any non-public or provide confidential work product to such counsel.

Dated:  May 13, 2025

ONE LLP

By: /s/ Taylor C. Foss
     Nathaniel L. Dilger
     William J. O'Brien
     Peter R. Afrasiabi
     Taylor C. Foss
     Jennifer A. Mauri

     Attorneys for Plaintiff and Counter-Defendant, FaceTec, Inc.

-and-

PARKER SHAFFIE LLP
     David B. Parker

     Specially Appearing for Plaintiff and Counter-Defendant FaceTec, Inc.

NOTICE OF MOTION AND MOTION TO DISQUALIFY;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:24-cv-03623-RFL