# EXHIBIT 4

**MORRISON FOERSTER**

755 PAGE MILL ROAD
PALO ALTO
CALIFORNIA 94304-1018

TELEPHONE: 650.813.5600
FACSIMILE: 650.494.0792

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AUSTIN, BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, NEW YORK,
PALO ALTO, SAN DIEGO, SAN FRANCISCO,
SHANGHAI, SINGAPORE, TOKYO,
WASHINGTON, D.C.

April 22, 2025

Writer's Direct Contact
+1 (650) 813-5688
KKuwayti@mofo.com

**BY EMAIL**

Nathaniel L. Dilger
Peter R. Afrasiabi
Taylor C. Foss
Jennifer A. Mauri
One LLP
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660

Email: ndilger@onellp.com; pafrasiabi@onellp.com;
tfoss@onellp.com; jmauri@onellp.com

Re:     *FaceTec, Inc. v. Jumio Corp.*, Case No. 3:24-cv-3623-RFL (N.D. Cal.)

Dear Counsel:

      We are writing in response to Trevor Chaplick's April 11, 2025 email about Morrison & Foerster's ("Morrison") role as prior "counsel of record" in the above-referenced litigation (the "patent litigation") demanding that we "resign due to material conflicts of interest." The fundamental factual assumption underlying the email is incorrect. Morrison never acted as co-counsel with Perkins Coie ("Perkins"). As Morrison told counsel for FaceTec at the time, Morrison appeared in the patent litigation for the limited purpose of securing an extension of time for Jumio to respond to FaceTec's complaint. Morrison had no substantive involvement in litigating the case and no communications with Perkins prior to withdrawing from the limited purpose appearance. Therefore, there is no conflict of interest and FaceTec's objection to Morrison's appearance is unfounded.

      FaceTec served Jumio with the complaint in the patent litigation just days before the commencement of the arbitration hearing in the commercial dispute between Jumio and FaceTec. At a break in the arbitration hearing, in the kitchen of the JAMS facility, I asked Nate Dilger if FaceTec would agree to a 45-day extension of time. I specifically told him that Morrison was representing Jumio for the sole purpose of obtaining the extension of time. Morrison subsequently filed a stipulation to the extension with the Court, with Mr. Dilger's approval, on July 9. Morrison did nothing further in the case before withdrawing the next court day after Perkins filed the answer and counterclaims on Jumio's behalf.

**MORRISON FOERSTER**

Nathaniel L. Dilger
April 22, 2025
Page Two

      Morrison was never engaged by Jumio to act as counsel defending the merits of the patent litigation, or to work as co-counsel with Perkins. Contrary to the assumption in the email, Morrison did not have a single communication—orally or in writing—with anyone from Perkins during what the letter refers to as "this significant period of overlap of up to nearly a month and a half." Perkins did not include Morrison as counsel on the caption page on anything that they filed in this time frame. Nor did Morrison have any substantive communications with Jumio about the FaceTec patents or the patent litigation during this time period. Quite simply, Morrison was engaged by Jumio to obtain an extension in the patent litigation and that's what Morrison did.

      FaceTec's contention that "Perkins ethical violations are presumed to infect [Morrison Foerster's] representation of Jumio" is also incorrect and not supported by the cited cases, each of which is easily distinguishable. Unlike here, in each of those cases the conflicted counsel personally had confidential information and there was an actual co-counsel relationship with information exchanged between the conflicted counsel and co-counsel. *See Pound v. DeMera DeMera Cameron*, 135 Cal. App. 4th 70, 74-81 (2005) (granting motion to disqualify co-counsel where conflicted counsel possessed client confidential information, and met with co-counsel and plaintiff "a few times" to discuss the case); *Beltran v. Avon Prods., Inc.*, 867 F. Supp. 2d 1068, 1084 (C.D. Cal. 2012) (disqualifying co-counsel where conflicted counsel possessed client confidential information, collaborated with co-counsel to prepare and file complaint, and "engaged in fairly extensive discussions about the case and Plaintiff's litigation strategy before filing their complaint"); *Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.*, 913 F. Supp. 2d 900, 905, 909-10 (C.D. Cal. 2012) (disqualifying co-counsel where conflicted counsel met with co-counsel "on a number of occasions" to coordinate regarding the case, work on mediation, report case progress, and respond to discovery requests). Disqualification would be particularly inappropriate here because, as we understand the Court's order, there was no finding that the members of the Perkins team handling the litigation actually had access to Jumio's confidential information themselves. *See Flatworld Interactives LLC v. Apple Inc.*, 2013 WL 4039799, at *7-8 (N.D. Cal. Aug. 7, 2013).

      The email ignores multiple cases in the Northern District of California rejecting the premise of FaceTec's argument. Courts in this District have repeatedly held that "disqualification of one firm does not automatically compel disqualification of the firm's co-counsel . . . . Rather, the particular facts of each case must be considered in order to determine whether disqualification is warranted." *Oracle Am. Inc. v. Innovative Tech. Distrib., LLC*, 2011 WL 2940313, at *5 (N.D. Cal. July 20, 2011) (quoting *In Re Airport Car Rental Antitrust Litig.*, 470 F. Supp. 495, 501–502 (N.D. Cal. 1979). Accordingly, courts have repeatedly denied disqualification motions where conflicted counsel did not actually convey any client confidential information to co-counsel. *See Love v. Permanente Med.*

**MORRISON FOERSTER**

Nathaniel L. Dilger
April 22, 2025
Page Three

*Grp.*, 2013 WL 5273213, at *6 (N.D. Cal. Sept. 18, 2013) (denying motion to disqualify o-counsel where "there is no evidence that [co-counsel] received any confidential information about [defendant] through [conflicted counsel]"); *Flatworld Interactives*, 2013 WL 4039799, at *7 (denying motion to disqualify co-counsel where there is "no evidence" that he received any client confidential information").

FaceTec's demand that Morrison decline to take over prosecution of Jumio's petitions for *inter partes* review is equally without merit. The PTAB also has repeatedly denied motions to disqualify counsel absent a showing that they had been provided with client confidential information that is relevant to the proceedings before it. *See, e.g.*, *TD Ameritrade Holding Corp., et al., v. Trading Techs. Int'l, Inc.*, CBM2014-00131-00137, Paper 10 at 4 (PTAB July 24, 2014) (denying Petitioner authorization to file motion to disqualify counsel because "[Petitioner] TD Ameritrade makes no allegations that [PO's counsel] Finnegan possesses confidential information gained from TD Ameritrade during representation that is related to these proceedings."). Morrison has not received any confidential FaceTec information from Perkins, and it is difficult to understand how such information could even be relevant to a firm stepping into the IPR proceedings at this point in time.

The threat of disqualification should not be used to deprive Jumio its choice of counsel to gain a tactical advantage in this case. Courts recognize that attempts to disqualify counsel are "often tactically motivated and disruptive to the litigation process." *Openwave Sys. Inc. v. Myriad France S.A.S.*, 2011 WL 1225978, at *6 (N.D. Cal. Mar. 31, 2011). Accordingly, disqualification is viewed as "a drastic measure that is generally disfavored," and should be "subjected to particularly strict judicial scrutiny" with the party seeking disqualification bearing a "heavy burden." *Id.* at *6-7 (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) and *City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 851 (2006)). We are not aware of any cases that have found disqualification to be appropriate on facts similar to those here and FaceTec will not be able to carry its heavy burden. The governing law does not preclude Morrison from taking over the representation of Jumio following Perkins' disqualification, and FaceTec's objection to Morrison's representation of Jumio is accordingly unfounded.

We trust that this addresses FaceTec's concerns. Morrison and Jumio are committed to an orderly transition of counsel, and to ensuring that Morrison receives no information from Perkins potentially tainted by Perkins' conflict of interest. You may call if you wish to discuss this further. If FaceTec prefers, we will communicate with Mr. Chaplick directly about this issue once you provide written confirmation that it is appropriate to do so.

**MORRISON FOERSTER**

Nathaniel L. Dilger
April 22, 2025
Page Four


Sincerely,

*/s/ Kenneth A. Kuwayti*

Kenneth A. Kuwayti

cc: Gina Signorello (*by email*)
gina.signorello@jumio.com

William J. O'Brien (*by email*)
wobrien@onellp.com